## UNITED STATES *v.* WEITZEL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 567.   Argued March 7, 1918.—Decided April 15, 1918.

Section 5209, Rev. Stats., punishing embezzlements and false entries by any "president, director, cashier, teller, clerk, or agent" of a national bank, does not apply to a receiver of such a bank, appointed by the Comptroller of the Currency under Rev. Stats., § 5234; he is an officer of the United States and not an agent of the bank.

Statutes creating and defining crimes are not to be extended by intendment upon the ground that they should have been made more comprehensive.

Affirmed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Warren* for the United States:

The powers, functions, and duties of a national bank receiver are such as to constitute him an "agent" of the bank, within the broad meaning of that word, as used

in Revised Statutes, § 5209. It should be noted that a statutory receiver of a national banking association is not the officer of, nor appointed by, or responsible to, any court. *In re Chetwood*, 165 U. S. 443, 458. He, is appointed by the Comptroller of the Currency to act for the bank, in pursuance of special statutory provisions whence the receiver derives his powers and to which he must look for guidance in the performance of his functions. He is paid out of the funds of the bank; he takes the place of the bank; his signature is the signature of the bank. The efficient liquidation of a bank usually requires considerable negotiation; it may require various contracts which do not immediately operate to liquidate its assets; the receiver conducts many transactions in behalf of the bank while engaged in the general process of liquidation; and in these transactions he may be said to represent the bank and all those who own an interest in the business of the bank. That he acts for the bank, as well as for the creditors, is clear, since in many cases, after payment of creditors, the receiver turns back assets to the bank either for continuance of business by it or for liquidation by an agent chosen by the bank, as provided in the Act of June 30, 1876, c. 156, § 3, 19 Stat. 63. *Bank v. Kennedy*, 17 Wall. 19, 22, 23.

The appointment of the receiver does not work dissolution of the bank or affect suits pending against it, or incapacitate it from suing or being sued. Its corporate existence continues after the appointment of a receiver and until its affairs have been finally wound up. *Chemical National Bank* v. *Hartford Deposit Co.*, 161 U. S. 1, 7; *Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383, 400.

In *Rosenblatt* v. *Johnston*, 104 U. S. 462, 463, it is said that the bank's "property and assets, in legal contemplation, still belong to the bank, though in the hands of a receiver, to be administered under the law. The bank did not cease to exist on the appointment of the receiver."

A receivership may be of a temporary or provisional nature, and may last only long enough to satisfy the Comptroller that the bank is not insolvent, or that the facts do not present a case for a receiver as provided by the statute. See *Jackson* v. *Fidelity & Casualty Co.*, 75 Fed. Rep. 359, 364.

In *Case* v. *Terrell*, 11 Wall. 199, it was held that the receiver of a national bank represents the bank, its stockholders, and creditors, and that neither he nor the Comptroller of the Currency can subject the Government to the jurisdiction of the ordinary courts to determine the conflicting claims of the United States and other creditors in the hands of such a bank. In the course of the opinion, it was said (p. 202): "He represents the bank, its stockholders, its creditors, and does not in any sense represent the Government." See *Kennedy* v. *Gibson*, 8 Wall. 498, 506.

Revised Statutes, § 5209, was intended to cover the whole ground of defalcations which might be committed by all those who might have any connection with, or control over, the assets, funds, credits, books and papers of a national bank. In the first place, it should be particularly noted that although the National Bank Act was passed in 1863—55 years ago—this case is the first instance, so far as the reports show, in which the contention has ever been raised that an embezzling national bank receiver was not punishable under the act, like any other embezzling representative of the bank. Since it would strain the credulity of the hardiest optimist as to human nature to believe that this is the first instance of a dishonest bank receiver, it would seem that the point would have been taken by some keen attorney during these 55 years "if it had been supposed by anyone that such legislation" failed to provide for such prosecution. *Fairbanks* v. *United States*, 181 U. S. 283, 323.

Embezzlement by a receiver falls squarely within the

evil at which the section was aimed, and the statute should be so construed as to effectuate its evident intent. The statute punishes the acts of three classes of persons: (a) president, director, cashier, teller; (b) clerk; (c) agent. The first class (a) are referred to in the section as "officers," for it provides that "every person who with like intent aids or abets any *officer*, clerk, or agent in any violation of this section," etc. These three classes of persons were clearly intended to include every person acting for the bank who would have any control over its funds, credits, books, or papers. See *Commonwealth* v. *Wyman*, 8 Metc. 247, 252; *State* v. *Barter*, 58 N. H. 604, 605; *Wynegar* v. *State*, 157 Indiana, 577, 579, 580; *Clement* v. *Canfield*, 28 Vermont, 302, 304.

The Government contends that the word "agent," in the first line of the section, should, in order to effectuate the full purpose, be given as reasonable a construction as this court gave to the word "agent" in the twelfth line of the same section in *United States* v. *Corbett*, 215 U. S. 233.

The lower court's decision will have this result: That a national bank clerk may be indicted under a statute which affixes a minimum penalty of five years' imprisonment, whereas a national bank receiver may be indicted in a federal court (if at all) only under a statute which contains no minimum penalty and makes it possible for him to escape with a simple fine (Federal Criminal Code, § 97). The Government contends that it is the clear duty of this court to so construe § 5209 as to avoid any such unjust and ridiculous result.

A national bank receiver is not an officer of any court and has not the status of a judicial receiver. He is simply a liquidating agent provided for the bank by the statute. In accepting its charter, the bank accepts all the provisions of the National Bank Act, including the provision for appointment of such a liquidating agent or receiver;

and when such a receiver is appointed as such an agent by the Comptroller, his appointment is impliedly authorized by the bank.

An agent may be constituted either by express act, or by implication, or by ratification, or by acceptance of statutory conditions, or by operation of law. Mechem on Agency, 2d ed., 1914, § 26. A corporation for certain purposes may be conclusively deemed to assent to the appointment by statute of an agent to accept service. It is well-established law that the charter of a corporation embraces the provisions of law contained in the special or general statute under which the organization is formed; and the corporation accepts all such provisions as part of its charter. Each national bank, therefore, impliedly consents to the appointment of such an agent to act for it upon the happening of any of the stipulated contingencies, and it accordingly assents to the authorized acts of such receiver when duly appointed.

The Government contends that the doctrines relative to judicial receivers are not in any way pertinent, and that the text books and cases which state broadly that a judicial receiver is not the agent of the corporation (see *Metz* v. *Buffalo &c. R. R.*, 58 N. Y. 61, 66; *State* v. *Hubbard*, 58 Kansas, 797, 801), do not apply in any way to this statutory bank receiver. If the statute, instead of saying in § 5234, "The Comptroller of the Currency may forthwith appoint a receiver," had said that he might appoint "an agent," or a "superintendent," or a "liquidator," the attempt to apply to such an appointee judicial decisions which referred solely to court receivers would never have been made. *Union Bank of Brooklyn* v. *Kanturk Realty Corporation*, 72 Misc. (N. Y.) 96, 97.

A distinction between a "chancery, or, as it is sometimes called, a common receiver," and a statutory receiver is taken in *Stokes* v. *Hoffman House*, 157 N. Y. 554, 559;

and referred to in *Quincy, Missouri & Pacific R. R. Co.* v. *Humphreys*, 145 U. S. 82, 97.

The functions and duties of a receiver are substantially the same as those of liquidating agent of the bank provided for impliedly under Rev. Stats., § 5220, and expressly under § 3 of the Act of June 30, 1876. Such a liquidating agent and a receiver both represent the bank in its corporate capacity, and act for its benefit. A liquidating agent has been held by the courts to be indictable under Rev. Stats., § 5209.

In *Jewett* v. *United States*, 100 Fed. Rep. 832, it was held that a liquidating agent, who was appointed in voluntary dissolution under § 5220, was an "agent" within the meaning of § 5209. Other statutes, moreover, provide expressly for another liquidating agent, i. e., an agent to be appointed by the shareholders to take over the bank's affairs after the receiver has ended his duties. See Act of June 30, 1876, c. 156, § 3, 19 Stat. 63. Of such an agent it was said, in *McConville* v. *Gilmour*, 36 Fed. Rep. 277: "The 'agent' is only the 'receiver' under another name. . . . Each of these administrative officials—the 'receiver' and the 'agent'—represent the bank in its corporate capacity, and neither of them is more or less than the other such a representative." The same view was taken in *Guarantee Co. of North Dakota* v. *Hanway*, 104 Fed. Rep. 369, 372. A "liquidating agent" appointed by the shareholders is indictable under § 5209 as an "agent." See *Jewett* v. *United States, supra.*

A decision that a receiver is an officer of the United States within the purview of the federal criminal laws will be attended by the following extraordinary results:

First. That from the year 1863 to the year 1879, an embezzling receiver of a national bank could not have been prosecuted under any federal criminal statute; for it was not until the latter year that, by the Act of February 3, 1879, c. 42 (20 Stat. 280; now § 97 of the Federal

Criminal Code), it was first made a crime for an officer of the United States to embezzle any money or property which came into his possession or under his control in the execution of his office.

. Second. That from the year 1876 to the year 1879, a liquidating agent of a national bank appointed under the Act of June 30, 1876, § 3, apparently could not have been prosecuted for embezzlement under any federal criminal statute; for *Guarantee Co. of North Dakota* v. *Hanway, supra,* held that such a liquidating agent is an officer of the United States "in every sense in which the receiver is."

Neither the manner of appointment, method of payment of salary, nor duration or tenure of office are such as to constitute a national bank receiver an officer of the United States. His appointment is by the Comptroller of the Currency, and is not required to be approved by the Secretary of the Treasury (Rev. Stats., § 5234); he is paid out of the assets of the bank before distribution of the proceeds (Rev. Stats., § 5238); and he is appointed for no definite time, and for no fixed statutory salary.

Such a receiver clearly does not come within the purview of the term "officer of the United States" as that term is construed in criminal statutes. *United States* v. *Hartwell,* 6 Wall. 385; *United States* v. *Germaine,* 99 U. S. 508, 510; *United States* v. *Mouat,* 124 U. S. 303, 307; *United States* v. *Smith,* 124 U. S. 525, 533; *Martin* v. *United States,* 168 Fed. Rep. 198; *Scully* v. *United States,* 193 Fed. Rep. 185; *United States* v. *Van Wert,* 195 Fed. Rep. 974. *Cf. Thompson* v. *Pool,* 70 Fed. Rep. 725, 727, 728.

The fact that for the limited purpose of suing in the federal courts a national bank receiver has been held to be an officer of the United States, as that term is used in statutes granting jurisdiction to federal courts, is not incompatible with the status of the receiver as an agent

of the bank.   To this extent, he acts in a dual capacity. *Kennedy* v. *Gibson*, 8 Wall. 498, 504; *Price* v. *Abbott*, 17 Fed. Rep. 506–508.

It seems clear, however, that the decisions only go to the limited extent of holding a receiver to be an officer of the United States within the meaning of that term in certain special jurisdictional statutes; e. g., Rev. Stats., § 563, cl. 4; § 629, cl. 3; § 380.

There is nothing unusual in one term having two distinct meanings in two different statutes (*Lamar* v. *United States*, 240 U. S. 60, 65); and the best illustration of this fact is to be found in two consecutive cases in 124 U. S., in which in *United States* v. *Mouat*, p. 303, a paymaster's clerk was held *not* to be an "officer of the Navy" within the meaning of the Act of June 30, 1876, c. 159, 19 Stat. 65, whereas in *United States* v. *Hendee*, p. 309, a paymaster's clerk was held to be an "officer of the Navy" within the meaning of the Act of March 3, 1883, c. 97, 22 Stat. 473.

*Mr. A. E. Stricklett*, with whom *Mr. Jackson H. Ralston* was on the briefs, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The Comptroller of the Currency is charged with the duty of supervising national banks.   When he deems it necessary to take possession of the assets of a bank and assume control of its operations, he appoints a receiver under Rev. Stats., § 5234.   Weitzel, so appointed receiver, was indicted in the District Court of the United States for the Eastern District of Kentucky under Rev. Stats., § 5209, for embezzlement and making false entries.   That section does not mention receivers, but provides that "every president, director, cashier, teller, clerk, or agent"

of a national bank who commits these offences shall be punished by imprisonment for not less than five nor more than ten years. The Government contended that the receiver was an "agent" within the meaning of the act. A demurrer to the indictment was sustained on the ground that he is not. The court discharged the prisoner and the case comes here under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246.

The receiver, unlike a president, director, cashier, or teller, is an officer, not of the corporation, but of the United States. *In re Chetwood,* 165 U. S. 443, 458. As such he gives to the United States a bond for the faithful discharge of his duties; pays to the Treasurer of the United States moneys collected; and makes to the Comptroller reports of his acts and proceedings. Rev. Stats., § 5234. Being an officer of the United States he is represented in court by the United States attorney for the district, subject to the supervision of the Solicitor of the Treasury, § 380. *Gibson* v. *Peters,* 150 U. S. 342. And because he is such officer, a receiver has been permitted to sue in the federal court regardless of citizenship or of the amount in controversy. *Price* v. *Abbott,* 17 Fed. Rep. 506. In a sense he acts on behalf of the bank. The appointment of a receiver does not dissolve the corporation, *Chemical National Bank* v. *Hartford Deposit Co.,* 161 U. S. 1, 7; the assets remain its property, *Rosenblatt* v. *Johnston,* 104 U. S. 462; the receiver deals with the assets and protects them for whom it may concern, including the stockholders; and his own compensation and expenses are a charge upon them. § 5238. But a receiver is appointed only when the condition of the bank or its practices make intervention by the Government necessary for the protection of noteholders or other creditors.[1] While the receivership continues the corporation is precluded from

---

[1] See Rev. Stats., §§ 5234, 5141, 5151, 5191, 5201, 5205, 5208.

dealing by its officers or agents in any way with its assets.
And when all creditors are satisfied or amply protected the
receiver may be discharged by returning the bank to the
control of its stockholders or by the appointment of a liqui-
dating agent under Act of June 30, 1876, c. 156, 19 Stat. 63.
Whether, as the Government assumes, such statutory
agent who is elected by the stockholders is included under
term "agent" as used in § 5209, we have no occasion to
determine. The question was expressly left undecided in
*Jewett* v. *United States*, 100 Fed. Rep. 832, 840. But the
assumption, if correct, would not greatly aid its contention.
The law can conceive of an agent appointed by a su-
perior authority; but the term "agent" is ordinarily used
as implying appointment by a principal on whose behalf
he acts. The fact that in this section the words "clerk, or
agent" follow "president, director, cashier, teller" tends,
under the rule of *noscitur a sociis*, to confirm the inference.
*United States* v. *Salen*, 235 U. S. 237, 249. Furthermore,
the term "agent of a bank" would ill describe the office
of receiver.

   Section 5209 is substantially a reënactment of § 52 of the
Act of February 25, 1863, c. 58, 12 Stat. 665, 680, the first
National Bank Act. It is urged by the Government, that
the punishment of defalcation by a receiver is clearly
within the reason of the statute and that, unless the term
"agent" be construed as including receivers, there was no
federal statute under which an embezzling receiver of a
national bank could have been prosecuted, at least until
the Act of February 3, 1879, c. 42, 20 Stat. 280, made of-
ficers of the United States so liable therefor; and, indeed,
cannot now be, because he should not be held to be an
officer. The argument is not persuasive. Congress may
possibly have believed that a different rule should be ap-
plied to an officer of the United States who is selected by the
Comptroller for a purpose largely different from that per-
formed by officers of the bank, and who gives bond for the

faithful discharge of his duties. Furthermore a *casus omissus* is not unusual, particularly in legislation introducing a new system.[1] The fact that in 1879 Congress should have found it necessary to enact a general law for the punishment of officers of the United States who embezzle property entrusted to them, but not owned by the United States, shows both how easily a *casus omissus* may arise and how long a time may elapse before the defect is discovered or is remedied. Statutes creating and defining crimes are not to be extended by intendment because the court thinks the legislature should have made them more comprehensive. *Todd* v. *United States,* 158 U. S. 278, 282. *United States* v. *Harris,* 177 U. S. 305.

The judgment of the District Court is

*Affirmed.*

---

[1] For example: 1. Extortion by government "officers": Act of March 3, 1825, c. 65, § 12, 4 Stat. 118 (R. S., § 5481); *United States* v. *Germaine,* 99 U. S. 508; amended by Act of June 28, 1906, c. 3574, 34 Stat. 546, to include "clerk, agent, or employee," and every person assuming to be such officer, etc. 2. Mailing obscene writings: Act of July 12, 1876, c. 186, 19 Stat. 90 (R. S., § 3893); *United States* v. *Chase,* 135 U. S. 255; amended by Act of Sept. 26, 1888, c. 1039, 25 Stat. 496, to include "letters," *Andrews* v. *United States,* 162 U. S. 420. 3. Intimidating witness: Act of April 20, 1871, c. 22, § 2, 17 Stat. 13 (R. S., § 5406); *Todd* v. *United States,* 158 U. S. 278; amended by Criminal Code (1909), § 136, to include witnesses before a "United States commissioner or officer acting as such," as well as witnesses before "courts." 4. Introducing liquor into Indian country: Act of March 15, 1864, c. 33, 13 Stat. 29 (R. S., § 2139); *Sarlls* v. *United States,* 152 U. S. 570; amended by Act of July 23, 1892, c. 234, 27 Stat. 260, to prohibit the introduction of "ale, beer, wine, or intoxicating liquor or liquors of whatever kind," as well as "ardent spirits." 5. Perjury: Act of March 3, 1869, c. 130, 15 Stat. 326 (R. S., § 5211; see also R. S., § 5392); *United States* v. *Curtis,* 107 U. S. 671; amended by Act of Feb. 26, 1881, c. 82, 21 Stat. 352, to include false swearing before a "notary public" or "any other officer" properly authorized by the State to administer oaths.