**PORT NEWARK NAT. BANK OF NEWARK v. WALDRON.**

**PETERSON v. SAME.**

**Nos. 4485, 4493.**

Circuit Court of Appeals, Third Circuit. Oct. 29, 1930.

Walter D. Van Riper, of Newark, N. J. (Geo. W. Jaques and Edward N. Perkins, both of New York City, of counsel), for appellant Peterson.

Leonard K. Guiler, of Pittsburgh, Pa., and Harry D. Gross, and Horace S. Cory, both of Newark, N. J., for appellant Port Newark Nat. Bank.

Arthur T. Vanderbilt, of Newark, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

These are appeals by the Port Newark National Bank of Newark, N. J., and F. Raymond Peterson, appointed receiver of the bank by the Comptroller of the Currency, from an order of the court below ousting him from the possession of the property, and assets of said bank. The facts in the case are these: The national bank in question was in grave financial difficulties when on August 7, 1930, L. K. Roberts, Chief National Bank Examiner, in pursuance of his duty as such, visited the bank, and was there in conference with its officers and Julius S. Rippel, president of the Merchants' & Newark Trust Company. The officers of the bank hoped to tide over its difficulties and prevent its being closed by the acceptance of an offer by Mr. Rippel to take over the bank and assume its known liabilities. The negotiations reached a point that day where they were about to be consummated the next day, when certain court proceedings hereafter referred to made it impossible to carry out the arrangements and prevent the closing of the bank. On being informed of such facts, the Comptroller of the Currency, the morning of the 8th, issued an order directing that "from information on file in this bureau, I am satisfied that 'The Port Newark National Bank of Newark,' located in the City of Newark, County of Essex and State of New Jersey, is insolvent and unable to pay its just and legal debts," and appointing F. R. Peterson receiver of the bank, "with all the powers, duties and responsibilities given to or imposed upon a receiver under the provisions of the Revised Statutes of the United States which authorize the appointment of a receiver." The statute noted (12 USCA § 191) provides: "Whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs ⸱ * * appoint a receiver who shall proceed to close up such association."

In pursuance of such appointment, Peterson immediately took possession of, and closed, the bank. It thus appears that the Comptroller, through his bank examiner, was engaged in supervising the bank on August 7th, and, when advised the proposed sale could not be effected, immediately appointed a receiver. It is clear that on August 7th, and from then on, the Comptroller was exercising his supervisory powers, and had assumed direction and control of the affairs of the bank with reference to its proposed sale. What, then, was the status of the receiver? In that regard the authorities are clear that the appointment of receivers by the Comptroller is part of a complete federal system looking to the control of national banks, and that such receivers are not like a receiver appointed by a court, but are officers of the United States, and their possession of the bank is the possession of the United States. Touching the first point, the Supreme Court in Easton v. Iowa, 188 U. S. 231, 23 S. Ct. 288, 291, 47 L. Ed. 452, after citing the legislation creating the national bank system, says: "It thus appears that Congress has provided a symmetrical and complete scheme for the banks to be organized under the provisions of the statute." To the same effect is United States v. Weitzel, 246 U. S. 534, 38 S. Ct. 381, 62 L. Ed. 872, where it is said: "The Comptroller of the Currency is charged with the duty of supervising national banks. When he deems it necessary to take possession of the assets of a bank and assume control of its operations, he appoints a receiver under Revised Statutes, § 5234 (Comp. St. 1916, § 9821 [12 USCA § 192])." This was in line with the earlier case of Cook County National Bank v. U. S., 107 U. S. 448, 2 S. Ct. 561, 564, 27 L. Ed. 537, where it is said:

"We consider that act as constituting by itself a complete system for the establishment and government of national banks, prescribing * * * their liability to be placed in the hands of a receiver, and the manner, in such event, in which their affairs shall be wound up," etc. Touching the second point, it was also said in the first case: "Our conclusions, upon principle and authority, are that Congress, having power * * * to regulate and control the exercise of their operations; that Congress has directly dealt with the subject of insolvency of such banks by giving control to the Secretary of the Treasury and the Comptroller of the Currency, who are authorized to suspend the operations of the banks and appoint receivers thereof when they became insolvent." So also the possession of a receiver appointed by the Comptroller is not the possession of a court officer, but is the possession of the United States. Thus, In re Chetwood, 165 U. S. 458, 17 S. Ct. 385, 391, 41 L. Ed. 782, it is said:

"The receiver was not the officer of any court, but the agent and officer of the United States, as ruled by Mr. Justice Gray, on circuit, in Price v. Abbott [C. C.] 17 F. 506, and by Mr. Justice Jackson, then circuit judge, in Armstrong v. Trautman [C. C.] 36 F. 275. And see Porter v. Sabin, 149 U. S. 473, 479, 13 S. Ct. 1008 [37 L. Ed. 815]; Platt v. Beach, 2 Ben. 303, Fed. Cas. No. 11,215; Frelinghuysen v. Baldwin [D. C.] 12 F. 395; Armstrong v. Ettlesohn [C. C.] 36 F. 209. * * * The receiver acts under the control of the comptroller of the currency, and the moneys collected by him are paid over to the comptroller, who disburses them to the creditors of the insolvent bank."

From the above it will be seen that on and from August 7th the Comptroller was, first by his bank examiner and later by his receiver, performing the duties of supervision and possession vested in him by Federal law and that his receiver was "the agent and officer of the United States" in possession of the bank and its assets. These appeals raise the question whether he was by the Court lawfully deprived of such possession as "the agent and officer of the United States."

How this was done we now state. About 5 o'clock on the afternoon of August 7th, Edward M. Waldron, a stockholder of the bank, presented to the judge below in chambers at Newark a bill against the bank, which was in the same city, alleging its insolvency, and praying for an injunction and the appointment of a receiver. We here note that,

although the bill, which was not verified, was supported by an affidavit made the day previously, no notice was given to the bank of the presentation and filing of the bill or no conference had with the Comptroller. Moreover no proffer was then or any time subsequently made of a bond in accordance with section 18 of the Act of October 15, 1914 (28 USCA § 382), which provides: "Except as otherwise provided in section 16 of this act, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby."

On presentation of the bill, the court below granted a rule on the bank, returnable August 11th, to show cause why a receiver should not be appointed and "ordered that until this order should be made absolute or discharged the said defendant, Port Newark National Bank of Newark, its officers, servants and agents absolutely desist and refrain from exercising any of its privileges and franchises, except in the ordinary course of business, until otherwise ordered." On return of the rule on August 11th, the court entered an order on August 13th, over the protest of the Comptroller's receiver and of the bank, appointing a court receiver for the bank "with full power and authority to * * * take into his possession all the goods and chattels, rights and credits, moneys and effects, lands, tenements, books, papers, choses in action, bills, notes and property of any kind and every description of said defendant wheresoever situated." In obedience to this order, the Comptroller's receiver surrendered possession to the court's receiver and took an appeal—as did also the bank.

We pass over the omission to give notice to the bank of the filing of the bill and the application for a receiver; of the failure to give bond either when the injunctive ex parte restraining order of August 7th was entered, or, indeed, when the final injunction order of August 13th was made; of the effect of the filing of the bill in precipitating the closing of the bank and making impossible the performance the acceptance of Mr. Rippel's offer on behalf of the Merchants' & Newark Trust Company of taking over the bank and preventing its closing; and confine ourselves solely to the question whether the Comptroll-

er's receiver was lawfully ousted from his possession. We are of opinion he was not. This is not a conflict between two courts of co-ordinate jurisdiction, but is one between the judicial and the executive arm of the sovereignty. In our view, the threatening status of this bank on August 7th and its efforts to prevent its failure necessitated the supervision and "dominion" of the Comptroller, and, when that duty was begun by the bank examiner, the Comptroller had "dominion" over the bank's affairs, and so continued until the efforts to prevent closing the bank were defeated by the filing of this bill. When this happened, it became the duty of the Comptroller, who, as his order stated, "had information on file in this bureau that the bank is insolvent," to appoint a receiver and close the bank. The wisdom of his so doing prevented a run and a depletion of the bank's assets. For it will be observed that the court's order of August 7th was not to close the bank, but to except from its order "the ordinary course of business of the bank"—a situation that would have precipitated a run upon it and a depletion of its assets from August 7th until August 13th, when the court's order appointing a receiver was entered. Indeed, the manifest inadequacy of the action of the court to protect the assets of the threatened bank in its order of August 7th, and the promptness and efficacy of the Comptroller's order of August 8th to close the bank and put his receiver in physical possession of its assets, is evidenced in the record, wherein the court below said: "I believe the Comptroller by his very prompt action, frustrated a situation which would have been most disastrous." It requires no stretch of the imagination to see that, if the bank had been given notice of the proposed filing of this bill, and had opportunity been afforded it to have informed the judge of the presence of the bank examiner of the negotiations pending with a man of Mr. Rippel's financial position, the "most disastrous" situation would not have arisen. Whether, indeed, the right of a Comptroller in every instance to appoint receivers is not paramount and exclusive is a question we do not feel called on to now decide, because the present case does not so require.

In that regard we also note that in Korbly v. Springfield Inst. for Savings, 245 U. S. 330, 38 S. Ct. 88, 90, 62 L. Ed. 326, the Supreme Court said:

"From the earliest days of the administration of the National Banking Act to this case attempts have been made in many forms to give to it a technical construction which would so restrict the powers of the Comptroller as to greatly delay and impede the settlement of the affairs of insolvent banks. But this court has uniformly declined to narrow the act by construction and has placed a liberal interpretation upon its provisions to promote its plain purpose of expeditiously and justly winding up the affairs and paying the debts of such unfortunate institutions."

Not only the research of counsel, but our independent research, has shown no case where a federal or state court has appointed a receiver for a going national bank as distinguished from one in liquidation. Sufficient to say that in the present case we regard the Comptroller at the time this bill was filed as having complete dominion over, and, by his bank examiner, full legal control of, the then and future operations of the bank, and that such situation might ultimately require the appointment of a receiver. Consequently, the court below, when the bill was filed, acquired no jurisdiction to shear the Comptroller of the statutory power to take the further step of appointing a receiver in case insolvency existed and the attempted sale fell through. As the order states the comptroller had on file at that time information of the insolvency of the bank, it is clear he had already complied with the statutory provisions of "on examination of its affairs," after which he "may appoint a receiver."

So holding, the case is remanded to the District Court with instructions that the receiver appointed by the court be discharged, first accounting to the Comptroller's receiver for his doings, and restoring to him possession of all of the bank's property, that the receiver appointed by the Comptroller be restored, and that the bill be dismissed, with costs both on these appeals and in the court below to be taxed against the complainant in the bill.