**GRINDLEY et al. v. FIRST NAT. BANK-DETROIT et al.**

No. 7352.

Circuit Court of Appeals, Sixth Circuit.

Dec. 18, 1936.

Rehearing Denied Feb. 10, 1937.

Irvin Long, of Detroit, Mich. (Goodenough, Voorhies, Long & Ryan, of Detroit, Mich., on the brief), for appellants.

Hugh L. Nichols, of Cincinnati, Ohio (Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, and Monaghan, Crowley, Clark & Kellogg, of Detroit, Mich., on the brief), for appellees.

Before HICKS and SIMONS, Circuit Judges, and RAYMOND, District Judge.

HICKS, Circuit Judge.

About January 1, 1913, First National Bank of Detroit created the "Pension Fund of the First National Bank of Detroit" to provide pensions for its officers and employees, their widows and children. Rules and regulations adopted for the administration of the fund were in effect on February 11, 1933. On that date defendants Clark, Hoppin, McLeod, Mon-

aghan, Shelden, Sweeny, and Wilson were trustees of the fund, and its assets of the face value of approximately $325,000 were in their custody and under their control. Section 20 of the rules and regulations provided: "No vested rights are conferred upon any person, nor shall any officer or employee have any rights in or to any part of the Fund, except as and to the extent expressly provided hereunder. The construction of all rules and regulations shall rest finally with the Board of Directors. The Bank reserves the right at any time to discontinue the Fund by repaying to the subscribing officers and employees, or their representatives, as herein described, the amounts theretofore contributed by such officers and employees, with interest computed, half yearly at the rate of four per cent. per annum, less the amount of pensions already paid, and, in the event of such discontinuance and repayment all pensions shall thereupon cease, and the balance of the Fund, if any, shall be paid to the Bank."

The assets of the fund consisted of cash, bonds, and real estate mortgages. These assets originated in contributions by the bank, its employees, and certain other parties; and in amounts received, as interest on investments and bank balances, and from profits on the sale of securities. The total receipts of the fund from its creation to June 19, 1933, were $823,799.64. The total disbursements for the same period were $495,058.73, leaving a balance of $328,740.91.

The First National Bank-Detroit, the successor of First National Bank of Detroit, closed its doors on February 11, 1933. On May 11, 1933, the Comptroller of the Currency declared the bank insolvent and appointed defendant Thomas as receiver. Thomas entered upon the discharge of his duties and continued in the possession of all the books, records, and assets of the bank until August 15, 1934, when he was succeeded as receiver by defendant B. C. Schram.

Prior to February 11, 1933, plaintiffs Grindley, Kauffman, Laycock, Lokie, McClellan, Nichols, and Basil A. Lemke, the husband of plaintiff Mary Ann Lemke became eligible for retirement on pension and were granted pensions for life by the trustees of the fund, in accordance with the rules and regulations. Basil A. Lemke died on February 19, 1934, leaving the plaintiff, Mary Ann Lemke, as his widow. These plaintiffs received their pensions up to and including January, 1933, but have received nothing since. The amounts received by them and Basil· A. Lemke together with the amounts each contributed to the fund are set out in the schedule.[1]

On June 19, 1933, defendant Thomas, being in possession, as receiver, of the assets of the fund, advised all pensioners thereunder that it was being discontinued and offered to pay each of them for the first eleven days in February, 1933, if they would release and discharge the trustees from any liability on account of its discontinuance. He took releases from two other pensioners, and from all employees of the bank who had contributed to the fund but had not been retired on pension, so that plaintiffs are the only persons making any claim against the assets of the fund except one party whose claim is not involved herein.

The rationale of plaintiffs' bill is that the matter is controlled by section 20 of the rules and regulations; that by virtue of this section the bank alone was authorized to discontinue the fund; that it had not taken any action, although it had power to act, because its insolvency and the appointment of the receiver did not dissolve the corporation; and that the fund therefore should be restored to the possession of the trustees and the plaintiffs should be paid their pensions therefrom until such time as the bank by affirmative action terminated its existence.

Plaintiffs challenge the authority of Receiver Thomas to discontinue the fund. The court, confirming the report of the special master, denied plaintiffs' contention. The purport of its decree was that the receiver was authorized to terminate the fund but that its discontinuance took effect from June 19, 1933, rather than February 11, the date upon which the bank closed. This difference in date is not material to the controversy here.

| 1   Name | Received from Fund | Contributed to Fund | Name | Received from Fund | Contributed to Fund |
|---|---|---|---|---|---|
| Joseph Grindley | $22,057.64 | $ 52.50 | Lawrence A. McClellan | 10,640.00 | 523.35 |
| Albert W. Kauffman | 8,470.00 | ..... | Edward T. Nichols | 15,675.00 | 719.22 |
| Charles W. Laycock | 1,544.10 | 390.75 | Basil A. Lemke | 6,007.01 | _490.00 |
| Charles W. Lokie | 11,305.00 | 513.62 | | | |

112

Plaintiffs' position is untenable. It is of course true that the insolvency of a national bank and the appointment of a receiver therefor docs not dissolve its corporate existence and that such bank may sue in its own name to determine claims in its favor or be sued to determine claims against it. Bank of Bethel v. Pahquioque Bank, 14 Wall.(81 U.S.) 383, 400, 20 L.Ed. 840; Chemical Natl. Bank v. Hartford Dep. Co., 161 U.S. 1, 4, 16 S.Ct. 439, 40 L.Ed. 595; National Bank v. Ins. Co., 104 U.S. 54, 76, 26 L.Ed. 693; Speckert v. German Natl. Bank, 98 F. 151, 154 (C.C.A. 6); Denton v. Baker, 79 F. 189, 194 (C.C.A. 9). But it is not true that it can interfere with or supersede its receiver in the liquidation of its assets. We think that plaintiffs' contention disregards the comprehensive scheme embodied in the statutes for the control and operation of national banks.

Section 191, title 12 U.S.C. (12 U.S. C.A. § 191), provides that whenever the Comptroller of the Currency is satisfied that a national bank is insolvent, he may "after due examination of its affairs * * * appoint a receiver who shall proceed to close up such association." By title 12 U.S.C.A. § 192, the receiver was required under the direction of the Comptroller, to take possession of the books, records, and assets of every description of the bank and collect all debts, dues and claims belonging to it. He was further required to "pay over all money so made to the Treasurer of the United States, subject to the order of the comptroller." The purpose of these statutes is to place the exclusive control of an insolvent national bank in the hands of the Comptroller of the Currency for the liquidation of its assets through a receiver who acts under his direction. Easton v. Iowa, 188 U.S. 220, 231, 23 S.Ct. 288, 47 L.Ed. 452; Cook County Natl. Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 27 L.Ed. 537; Port Newark Natl. Bank, etc., v. Waldron, 46 F.(2d) 296, 299 (C.C.A.3); Liberty Natl. Bank v. McIntosh, 16 F.(2d) 906, 909 (C. C.A.4); Hulse v. Argetsinger, 12 F.(2d) 933, 935 (D.C.).

Appellants concede that the bank had the right under section 20 of the rules and regulations to discontinue the fund and that after the trust was liquidated any remaining balance would belong to it. We think that under the spirit, if not the letter, of the statute, this right of the bank passed to the receiver, who, by virtue of his appointment, represented the bank and was vested with its rights and full control over its assets. See United States v. Weitzel, 246 U.S. 533, 541, 38 S.Ct. 381, 62 L.Ed. 872; Case v. Terrell, 11 Wall. 199, 20 L.Ed. 134; Brown v. Schleier, 118 F. 981, 986 (C.C.A.8); O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.(2d) 146, 148. A contrary view would be out of harmony with the liberal construction heretofore given by the courts to the National Banking Act for the protection of its creditors and depositors.

The decree is affirmed.