## CARDIFF v. UNITED STATES.

### No. 12945.

United States Court of Appeals
Ninth Circuit.

Feb. 13, 1952.

Writ of Certiorari Granted May 5, 1952.

John Lichty, Portland, Or., for appellant.

Harvey Erickson, U. S. Atty., Spokane, Wash. (Arthur A. Dickerman, Atty., U. S. Food and Drug Administration, Federal Security Agency, Los Angeles, Cal., of counsel), for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment convicting Cardiff of violating Section 331(f) of 21 U.S.C.A. by his refusal to permit entry and inspection of the premises of the Washington Dehydrated Food Company of which Cardiff was manager.

The stipulated facts are as follows:

That the Washington Dehydrated Food Company, a corporation, is a processor of food, manufactured, packed and held for introduction into interstate commerce; that the appellant, Ira D. Cardiff, is the President of said corporation and was the operator and custodian of the factory of the Washington Dehydrated Food Company, and that as an individual he is responsible for the acts of the corporation; that on March 31, 1950, at Yakima, in the Southern Division of the Eastern District of Washington, Inspectors R. C. White and Horace A. Allen, agents of the Federal Security Agency, at a reasonable time did request permission to enter and inspect the factory, which request was refused by the appellant; that the Washington Dehydrated Food Company was at that time engaged in the preparation of food products for introduction and shipment into the channels of interstate commerce.

Cardiff contends that the district court has misconstrued the two applicable sections of the Food and Drug Act, 21 U.S. C.A. §§ 331(f) and 374. Section 331, for the violation of which the punishment is provided in Section 333, states in subdivision (f): "The following acts and the causing thereof are hereby prohibited: * * * (f) The refusal to permit entry or inspection as authorized by section 374."

The authorization in Section 374 is for entries at reasonable times (plural) and inspections also at such times. Such authorization is obtained only from a permission by the operator or custodian of the factory given pursuant to the request of the Food and Drug Administrator. Section 374 provides: "For purposes of enforcement of this chapter, officers or employees duly designated by the Administrator, after first making request and obtaining permission of the owner, operator, or custodian thereof, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein. June 25, 1938, c. 675, § 704, 52 Stat. 1057; Reorg.Plan No. IV, § 12, eff. June 30, 1940, 5 Fed.Reg. 2422, 54 Stat. 1237."

■ Section 331(f) and Section 333 constitute penal legislation making the first offense a misdemeanor and a second offense a felony.[1] Obviously these statutes will not have one interpretation where the offense charged is a misdemeanor and another one where the charge is a felony.

1. "§ 333. Penalties—Violations of section 331

"(a) Any person who violates any of the provisions of section 331 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if the violation is committed after a conviction of such person under this section has become final such person shall be subject to imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine."

Here there are none of the gossamer-like refinements of interpretations referred to in Pasadena Research Laboratories v. United States, 9 Cir., 169 F.2d 375, 379. The statutes must be construed as creating a felony for their violation. Hence in construing this penal legislation, it is elemental that if it be subject to two rational interpretations, we must accept that favorable to the accused. We think that Cardiff in refusing to grant the permission for successive inspections did not violate the statute so construed.

■ The permission which may be authorized by Section 374 is for repeated inspections at the "reasonable times" for which the section provides. Obviously the inspector is not required to obtain permission for each inspection. It was agreed at the hearing that Cardiff's plant is engaged in processing apples into boxes for shipping in carload lots into interstate commerce and that the apples are the product of different orchards. Most orchardists use a spray on the growing apples to resist insect infestation or other deterioration. This spray contains chemicals remaining on the apples which from certain orchards is in sufficient quantity to be deleterious to the health of the consumer, while from other orchards there is no spraying or the remaining spray is not sufficient to be injurious. The apples with the excessive spray require a costly treatment to be made safely edible.

Assume Cardiff, who has "authorized [inspection] by section 374," finds that the apples from so many orchards require this costly treatment that his season's operation will be at a loss and he therefore refuses to permit any more of the inspections, which he had authorized under 374. So doing he would commit a misdemeanor for the first refusal and upon final conviction thereof, a second refusal is a felony.

■ We do not agree with the government's construction of the two sections that while under 374 the inspector is to make entries and inspection *only* after requesting *and obtaining* permission of the owner, operator, or custodian, section 331 (f) makes it a crime if the inspector's request is refused. That is to say, Congress by section 374 gives the operator the right to refuse inspection and section 331(f) warns him that if he exercises the right so given him he is liable to imprisonment. It is true that "the Lord giveth and the Lord taketh away" in a manner seemingly unjust to the mind of man, but here we are considering an act of Congress.

Such a roundabout and unreasonable construction makes an absurdity of the requirement of the inspector of "obtaining permission." It would make nugatory instead of giving effect to the words, "after first making request and obtaining permission", etc. There is no merit to the contention of the government that these words do no more than provide for reasonable times for inspection, for section 374 would provide for this if the phrase were omitted. Congress if it desired to secure the inspections without obtaining permission would have done so in the manner of the preceding section 373 of the same Act.[2] There interstate carriers of foods and drugs *"shall,* upon the [mere] request of * * [the inspector]," permit "access to * * records showing the movement in interstate commerce" of their products.

Even assuming that the government's interpretations of this legislation creating a felony were not absurd and unreasonable,

2. "§ 373. Records of interstate shipment
"For the purpose of enforcing the provisions of this chapter, carriers engaged in interstate commerce, and persons receiving food, drugs, devices, or cosmetics in interstate commerce or holding such articles so received, shall, upon the request of an officer or employee duly designated by the Administrator, permit such officer or employee, at reasonable times, to have access to and to copy all records showing the movement in interstate commerce of any food, drug, device, or cosmetic, or the holding thereof during or after such movement, and the quantity, shiper, and consignee thereof; and it shall be unlawful for any such carrier or person to fail to permit such access to and copying of any such record so requested when such request is accompanied by a statement in writing specifying the nature or kind of food, drug, device, or cosmetic to which such request relates: * * *."

the interpretation we have given is also a reasonable one, and being the one more favorable to the accused must control.

The able district judge stated his doubt of the government's interpretation as follows: "Well, I had considerable difficulty in deciding the motion to dismiss the information. The statute on which the prosecution is based is not at all clear. I think it's very ambiguous and I reached my conclusion on what I thought the Congress should have intended rather than what they clearly said they intended in the statute. It's a very unsatisfactory statute, and I think it's one that should be clarified by a decision of the higher Court, and I think there is justification for Dr. Cardiff's position that he thought he was within his legal rights."

He had denied the defendant's motion to dismiss, 95 F.Supp. 206, from which the government could have taken the appeal he thought needed. Instead of jailing Cardiff he imposed a small fine, thus enabling the case to be appealed here instead of granting an unappealable acquittal.

The government's brief gives an extended review of the food and drug legislation and makes a strong argument for the need for public protection of the power to inspect food plants without permission of the owner, and states that without that power, enforcement of the law will be hamstrung. The language of Mr. Justice Brandeis in United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 382, 62 L.Ed. 872, is peculiarly applicable to this contention. There the court had for consideration the interpretation of a statute providing certain penalties against "every president, director, cashier, teller, clerk, or agent" of a national bank who committed certain offenses. The receiver of a national bank appointed by the controller of currency, was being prosecuted under that statute and it was necessary to interpret this statute and determine whether or not such a receiver fell within the meaning of the word "agent." In construing the statute as not covering the receiver, Justice Brandeis says at page 542 of 246 U.S., at page 382 of 38 S.Ct.: "It is urged by the government, that the punishment of defalcation by a receiver is clear-

ly within the reason of the statute and that, unless the term 'agent' be construed as including receivers, there was no federal statute under which an embezzling receiver of a national bank could have been prosecuted * * * *Statutes creating and defining crimes are not to be extended by intendment because the court thinks the legislature should have made them more comprehensive.*" (Emphasis supplied.)

The Food Administrator's remedy for the efficient enforcement of the law's protective provisions is the amendment of section 374 to correspond with the plain provision of 373. The judgment is reversed and the district court instructed to enter a judgment of acquittal of the defendant.

POPE, Circuit Judge (concurring).

The majority's able opinion makes an effort to read some meaning into this statute and states that in a certain hypothetical case, not like the one before us, a person might be guilty of an offense under this section. I am not prepared, and I do not think it wise, to express an opinion upon this suppositious case. I think that this statute, as written, is just plain nonsense, and because it is not the function of a court to rewrite such language, the judgment must be reversed.