POTOMAC ELECTRIC POWER CO. v. RUDOLPH et al., Com'rs of District of Columbia.*

WASHINGTON RY. & ELECTRIC CO. v. SAME.

Court of Appeals of District of Columbia.

Submitted October 3, 1928. Decided November 5, 1928.

Nos. 4655, 4656.

*Certiorari denied 49 S. Ct. 185, 73 L. Ed. ——.

ROBB, Associate Justice. These appeals are from decrees in the Supreme Court of the District, dismissing bills of the Potomac Electric Power Company, hereinafter referred to as the Power Company, and the Washington Railway & Electric Company, hereinafter referred to as the Railway Company, to enjoin the District from including in the assessments and levy of taxes for the years 1926 and 1927, in the case of the Power Company, interest and dividends received from investments, and rent received from land, buildings, and equipment; in the case of the Railway Company, dividends on stock of the Power Company owned by the Railway Company, rent of equipment and furnishing power to related utilities, rent of buildings and other property to related utilities, furnishing power to unrelated utilities, use of equipment to unrelated companies, use of tracks by unrelated utilities, rent of buildings and other property to unrelated utilities, excess of amount received over the actual cost of reclaiming oil for unrelated parties, interest from bonds and notes of subsidiary companies, interest and dividends from investments, and amount received to cover deficit from Foxall Village Bus Line operations.

It is the contention of the Power Company that the items above mentioned constituted no part of the gross earnings of that company. The Railway Company contends that the items objected to formed no part of the gross receipts of that company within the meaning of the taxing Acts.

The Railway Company was incorporated by the Act of July 29, 1892 (27 Stat. 326). Section 7 of that act provides that the company each year shall "make a report to Congress of the names of all the stockholders therein and the amount of stock held by each, together with a detailed statement of the bonded and other indebtedness *and the receipts and expenditures, from whatever source and on whatever account, for the preceding year;* * * * and said company shall pay to the District of Columbia, in lieu of personal taxes upon personal property, including cars and motive power, each year four per centum of its gross earnings; * * * and said per centum of its gross earnings shall be in lieu of all other assessments of personal taxes upon its property, used solely and exclusively in the operation and management of said railway." (Italics ours.) By section 8 it is provided "that Congress may at any time amend, alter, or repeal this act."

S. R. Bowen, John S. Barbour, and E. D. Detwiler, all of Washington, D. C., for appellants.

W. W. Bride and F. H. Stephens, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

Under section 10 of the Act of June 10, 1896 (29 Stat. 318), every street railway company is required each year to make a detailed report to Congress, and among the items are "rents, including use of other roads; total expense of operating road, and repairs; receipts from passengers; receipts from all other sources, specifying what, in detail; total receipts from all sources during the year."

The Act of July 1, 1902 (32 Stat. 590, 619), by paragraph 5 of section 6, requires all gas, electric lighting, and telephone companies, through their proper officers, to make affidavit to the board of personal tax appraisers each year "as to the amount of its or their gross earnings for the preceding year, * * *" and to pay to the collector of taxes of the District "on such gross earnings as follows: Each national bank, and all other incorporated banks, and trust companies, respectively, six per centum; each gas company, five per centum; each electric lighting, and telephone company, four per centum. And in addition thereto the real estate owned by each national or other incorporated bank, and each trust, gas, electric lighting and telephone company in the District of Columbia shall be taxed as other real estate in said District: Provided, that street railroad companies shall continue to pay the four per centum per annum on their gross receipts and other taxes as provided by existing law. * * *"

Paragraph 5 of section 6 of the foregoing act of 1902 was amended by section 2 of the Act of April 28, 1904 (33 Stat. 563), as follows:

"That that part of the proviso in paragraph five, section six, relating to street railroads 'shall be construed to mean that all street railroad companies shall pay four per centum per annum on their gross receipts within the District of Columbia and other taxes as provided by existing law.'"

■ The tax assessed against these appellants under the foregoing Acts is a franchise tax as distinguished from a property tax. So much was distinctly held in Security Savings & Com. Bank v. District of Columbia, 51 App. D. C. 316, 279 F. 185. See cases there cited. Where a tax is lawfully imposed upon the exercise of the privilege of doing business, its measure may include income from property of a corporation not actively used in the business. It was so held in Flint v. Stone Tracy Co., 220 U. S. 107, 166, 31 S. Ct. 342, 355 (55 L. Ed. 389, Ann. Cas. 1912B, 1312), where the court said: "There is no rule which permits a court to say that the measure of a tax for the privilege of doing business, where income from property is the basis, must be limited to that derived from property which may be strictly said to be actively used in the business. Departures from that rule sustained in this court are not wanting."

In McCoach v. Minehill Railway Co., 228 U. S. 295, 307, 33 S. Ct. 419, 424 (57 L. Ed. 842), the court, after an analysis of the decision in Flint v. Stone Tracy Co., said: "In short, the inclusion of income derived from property in arriving at the measure of the tax to be imposed with respect to the doing of corporate business was sustained largely because the property not used in the business, and the income from such property, have a fair relation to the business itself, and may contribute materially to its proper and economical conduct. * * * The distinction is between (a) the receipt of income from outside property or investments by a company that is otherwise engaged in business; in which event the investment-income may be added to the business income in order to arrive at the measure of the tax, and (b) the receipt of income from property or investments by a company that is not engaged in business except the business of owning the property, maintaining the investments, collecting the income and dividing it among its stockholders. In the former case the tax is payable; in the latter not."

The real question, therefore, involved in these cases, is what was the intent of Congress as expressed in the taxing acts. If that intent clearly appears and constitutional limitations have been observed, "it is no part of the function of a court to inquire into the reasonableness of the excise either as respects the amount, or the property upon which it is imposed." Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713; McCray v. United States, 195 U. S. 27, 58, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Flint v. Stone Tracy Co., 220 U. S. 107, 167, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

Section 7 of the Act of July 29, 1892 (27 Stat. 326), incorporating the Railway Company, requires that company to make an annual detailed statement to Congress of "receipts and expenditures, from whatever source and on whatever account, for the preceding year." This provision bears direct relation to the provision by which it is followed, namely, that requiring the company to pay each year to the District, in lieu of personal taxes upon personal property, "four per centum of its gross earnings."

■ But it is urged the provision that "said

per centum of its gross earnings shall be in lieu of all other assessments of personal taxes upon its property, used solely and exclusively in the operation and management of said railway" indicates that it was not the intent of the Act to have included any items of earnings derived from property not directly used in the operation of the railway. We are unable to accept this view. The words imposing the tax are: "And said company shall pay to the District of Columbia, in lieu of personal taxes upon personal property, including cars and motive power, each year four per centum of its gross earnings." Under that language it well might have been urged that any property, the earnings of which had been included in the railway company's gross earnings, would be exempt from taxation in lieu of personal taxes upon personal property. Evidently not being willing to exempt all such property, Congress in the final provision limited the exemption to the property used solely and exclusively in the operation and management of the railway.

Cogency is added to this view by the legislation which followed. The Act of 1902 (32 Stat. 590, 619) required railroad companies to "continue to pay the four per centum per annum on their gross receipts and other taxes as provided by existing law." The act of 1904 (33 Stat. 563) declares that the proviso just referred to "shall be construed to mean that all street railroad companies shall pay four per centum per annum on their gross receipts within the District of Columbia and other taxes as provided by existing law." It will be observed that Congress in the later acts used the more comprehensive term "gross receipts" in the place of "gross earnings" as used in the original Act. In our view, therefore, Congress in these Acts clearly intended, and used language appropriate to that end, to tax the railway company on its gross receipts within the District of Columbia from whatever source.

Reliance has been placed upon the decision in the Spreckels Case, 192 U. S. 397, 24 S. Ct. 376, 48 L. Ed. 496; but the language of the taxing act in that case was quite different from that here involved. The statute there involved provided: "That every person, firm, corporation, or company carrying on or doing the business of refining petroleum, or refining sugar, or owning or controlling any pipe line for transporting oil or other products, whose gross annual receipts exceed two hundred and fifty thousand dollars, shall be subject to pay annually a special excise tax equivalent to one-quarter of one per centum on the gross amount of all receipts of such persons, firms, corporations, and companies in their respective business in excess of said sum of two hundred and fifty thousand dollars."

In Flint v. Stone Tracy Co., 220 U. S. at page 166, 31 S. Ct. 355 (55 L. Ed. 389, Ann. Cas. 1912B, 1312), the Court, in speaking of the Spreckels Case, said: "It is true that in the Spreckels Case, 192 U. S. supra, the excise tax, for the privilege of doing business, was based upon the business assets in use by the company, but this was because of the express terms of the statute which thus limited the measure of the excise. The statute now under consideration bears internal evidence that its draftsman had in mind language used in the opinion in the Spreckels Case, and the measure of taxation, the income from all sources, was doubtless inserted to prevent the limitation of the measurement of the tax to the income from business assets alone." The difference between the statute involved in the Spreckels Case and that in the present case is clearly apparent.

It is further contended that in any event the Court erred in permitting the inclusion, as part of the gross receipts of the Railway Company of the amount of $3,868.18. The Railway Company extended its bus service to Foxall village under an agreement with a real estate firm that the firm would reimburse the railway for any deficit occurring. The first year a deficit occurred, and the firm reimbursed the company therefor. We fail to perceive why this sum is not a part of the gross receipts of the company. It was received by the company in lieu of receipts from passengers, which obviously would have been included in the gross receipts.

Under the Act of July 1, 1902 (32 Stat. 590, 619), the Power Company is required to make annual return of its gross earnings for the preceding year, and to pay thereon a tax of four per centum. In effect, we are asked to write into this statute words limiting the measure of the excise to gross earnings of the company in the production of electric power. This we may not do. The distinction between gross receipts and gross earnings as applied to manufacturing corporations was considered in District of Columbia v. Georgetown Gaslight Co., 45 App. D. C. 63. There is no contention here that the District in determining the amount of the gross earnings of the Power Company has failed to permit the company to deduct amounts spent in the purchase of raw materials used in the production of electric power. Unless, therefore, the meaning of gross earnings in this stat-

638

ute is to be so restricted as to frustrate the apparent intent of Congress as expressed in the terms of the statute, interest and dividends received from investments and rent received from land, buildings, and equipment were rightly included as part of the gross earnings of the company.

The decrees below are affirmed, with costs.

Affirmed.