**HAZEN et al., Com'rs of District of Columbia,
v. HARDEE.**

No. 6394.

United States Court of Appeals for the District of Columbia.

Argued April 10, 1935.

Decided May 13, 1935.

E. Barrett Prettyman, Vernon E. West, and Chester H. Gray, all of Washington, D. C., for appellants.

Huston Thompson and Herbert S. Ward, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Federal-American National Bank & Trust Company of Washington was organized under the national banking laws, and prior to March 6, 1933, was engaged in banking in the District of Columbia. On the latter date the bank was closed by presidential proclamation, and on March 14, 1933, a conservator was appointed by the Comptroller. Later, on November 1, 1933, the Comptroller appointed appellee receiver.

There is in effect in the District of Columbia a statute as follows:

"Each national bank as the trustee for its stockholders, through its president or cashier, and all other incorporated banks, and trust companies, in the District of Columbia, through their presidents or cashiers, and all gas, electric lighting, and telephone companies, through their proper officers, shall make affidavit to the board of

[1] "Primary Decomposition of Coal," by King & Willgress; "New Views of the Combustion of the Volatile Matter in Coal," by Katz.

personal-tax appraisers on or before the first day of August each year as to the amount of its or their gross earnings for the preceding year ending the thirtieth day of June, and shall pay to the collector of taxes of the District of Columbia per annum on such gross earnings as follows: Each national bank, and all other incorporated banks, and trust companies, respectively, six per centum. * * *" Act July 1, 1902, § 6, par. 5, 32 Stat. 619, as amended; title 20, D. C. Code 1929, § 760.

From July 1, 1932, to March 14, 1933, a period of eight and a half months, the bank was engaged in business. It was required on August 1, 1933, to certify the amount of its gross earnings over the preceding twelve months or any part thereof, on the basis of which its tax liability was computed, payable one-half in September and the balance in March following. On August 17, 1933, the assessor of the District of Columbia certified to the District Commissioners that the information at hand or procurable by him did not afford a satisfactory basis for assessment of the tax (against the bank), and he accordingly requested that the Commissioners petition the court for mandamus against the bank to compel the filing of a return. The Commissioners, acting pursuant to an act of Congress applicable to the District of Columbia, filed in the district court a petition for mandamus, directed to the conservator of the bank, to compel the filing of the return.[1]

An answer was filed by the conservator to the petition of the Commissioners, and to this answer a demurrer was filed by the Commissioners. Before argument was heard on the demurrer, the conservator was succeeded by the receiver (appellee), who was duly substituted as respondent. The receiver then answered, and the Commissioners demurred. On hearing, the demurrer was overruled and an order passed by the district court dismissing the petition for mandamus. From that order the Commissioners appealed.

The receiver refuses to make the return, on the ground that as agent of the Comptroller he is bound by the instructions of the Comptroller, and he says the Comptroller has instructed him not to make the return. The Comptroller refused to allow the receiver to make the return because the bank, when the demand was made, was not engaged in the banking business, but was in process of liquidation; that no tax was due, but, if due, there were no funds in the receiver's hands applicable to its payment.

On this appeal the receiver relies upon the provisions of the Act of March 1, 1879, § 22 (20 Stat. 351 [12 USCA § 570]), as follows:

"Whenever and after any bank has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States, on account of such bank, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall so appear to him, is authorized to remit so much of said tax against insolvent State and savings banks as shall be found to affect the claims of their depositors."

On the argument we were told that, since the answer was filed, the Comptroller has officially found the assets of the bank to be insufficient to pay its debts and has levied an assessment amounting to 100 per cent. on the stock of each stockholder.

In these circumstances, it is insisted that under the statute no tax can be levied, and therefore no return is necessary or proper.

We think this proposition cannot be sustained.

The act on which the receiver relies (1879)—assuming its provisions apply to the District Act under consideration—provides no more than that an insolvent bank shall not be required to pay into the Treasury taxes which will diminish the assets "necessary for the full payment of all its

---

[1] "If any person neglects or refuses to file a return of personal property as required by law, and the assessor certifies to the board of commissioners that, in his opinion, the best information obtainable does not afford a satisfactory basis for assessment, the board of commissioners may, by petition to the Supreme Court of the District of Columbia for mandamus against such person, compel the filing of a sworn return, and in such case the court shall require the person at fault to pay all expenses of the proceeding." Act of February 18, 1929, 45 Stat. 1227 (title 20, § 758, p. 252, D. C. Code, 1929).

depositors." If, in this case, there are not sufficient assets in the final liquidation of the bank to pay all depositors in full, no tax can be collected, and the filing of the return will have been wholly bootless; but it does not follow that, because the bank is insolvent or even because the Comptroller has made a 100 per cent. assessment, there will be no money on hand after payment of the depositors at the period of final liquidation. If there is, the law provides that it shall be returned to the stockholders. But the act we are discussing is not intended to extend relief to stockholders. Its entire purpose, on the contrary, is to relieve depositors by making funds to which they are entitled exempt from use in payment of taxes due by the bank, of which they are the customers. It goes no farther. In any case, therefore, in which it develops that, after the depositors are paid in full, there is a fund left, even where the fund is the result of an assessment against stockholders, the fund is liable to the payment of taxes assessed legally against the bank. The receiver is therefore in error in thinking that the purpose of the statute was to relieve the bank or its stockholders from tax liability.

█ It is not possible, certainly not on this record, to say that, beyond question, there may not be a fund out of which the tax can be paid. The determination of that question must abide final liquidation of the bank and a settlement of its debts. On the other hand, the tax assessing authorities of the District are required by the statute to assess the tax on the basis of the return. This ministerial duty which the law imposes cannot be performed unless the figures, i. e., the gross earnings, are available on which to calculate the tax; and this information, admittedly, is exclusively in the hands of the receiver. It will not suffice, therefore, to say, as he says, that the statute specifically imposes no duty or obligation on him with relation to the return. The statute, it is true, makes it the duty of the bank, through its president or cashier, to file the return, but admittedly neither the president or cashier is in position to perform that duty. The receiver alone has the data and information necessary to that end; for, as the Supreme Court said in Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 400, 20 L. Ed. 840: "Beyond doubt the appointment of a receiver supersedes the power of the direc-

tors to exercise the incidental powers necessary to carry on the business of banking, as the receiver is required to take possession of the books, records, and assets of every description of the association, and from that moment the association is forbidden to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking. * * *"

█ The receiver is the "statutory assignee" of the association and represents both the creditors and the association. Kennedy v. Gibson, 8 Wall. 498, 506, 19 L. Ed. 476. As such statutory assignee a duty is imposed on him to administer the estate for the benefit of those who may ultimately establish a right to share in its distribution, and this includes the duty to discharge all obligations of the association imposed by law. To permit the receiver to say that the duty of furnishing the particular return here in question is not imposed because the statute requires it to be filed by named officers of the bank, while at the same time conceding that such named officers, by operation of law, have neither the information, the right, nor opportunity to perform the duty, would be to adopt a strained construction of the act which, in our judgment, is wholly unjustifiable.

█ The question, as we view it, is not to be decided by such nice distinctions. It is, after all, a practical question, and, in the circumstances we have related the refusal of the receiver to furnish the information or make the return, whether at his own instance or at the instance of the Comptroller, was arbitrary, tends to embarrass proper administration of the tax statutes of the District, and ought to be condemned. The object of a writ of mandamus is to enforce, against any person, a duty which the law requires him to perform. Here, as we have seen, the law requires the bank, through its president or cashier, to file the return, but by the terms of his appointment the receiver supplants the officials of the bank and, for the purposes we are discussing, becomes the alter ego of the officer of the bank upon whom the statute imposes the obligation.

In this view, we think the lower court was in error in dismissing the petition. The case will therefore be remanded, with instructions to issue the writ.

Reversed and remanded.