## DISTRICT OF COLUMBIA v. WARDELL.
### No. 4762.

District Court of the United States for the
District of Columbia.
May 3, 1940.

Elwood H. Seal, Corp. Counsel, D.C., and Glenn Simmon, Asst. Corp. Counsel, both of Washington, D. C., for plaintiff.

Brice Clagett and Charles E. Wainright, both of Washington, D. C., for defendant.

LETTS, Justice.

The plaintiff is a municipal corporation and the defendant is the receiver of the District National Bank of Washington, an insolvent national banking association, appointed by and acting under the direction of the Comptroller of the Currency of the United States.

On November 29, 1938, the defendant reported to the assessor, D. C., that dur-

ing the calendar year 1936 as such receiver he derived gross receipts in the amount of $149,239.07 from the operation in the District of Columbia of three apartment houses and one office building belonging to the receiver as such. Thereafter, the assessor levied an assessment against the defendant for business privilege taxes for the fiscal year ending June 30, 1938, and penalties for failure to file the return within the time required by law in the total amount of $1,030.67.

On November 29, 1938, defendant as receiver filed a return with the assessor, D. C., reporting gross receipts from the rental of real estate and the operation of an apartment house and office building, belonging to the receiver as such, in the District of Columbia, during the calendar year 1937 in the total amount of $65,089.-60. Thereafter, the assessor made an assessment against the defendant in the amount of $315.94 for business privilege taxes for the fiscal year ending June 30, 1938 and penalties thereon.

In his answer the defendant alleges that any tax assessed against and collected from him as receiver of the District National Bank of Washington will diminish the assets necessary for the full payment of all of the depositors of the District National Bank of Washington and will diminish pro tanto the amount of the pro rata distributive share of said depositors in such assets. This allegation is not denied by the plaintiff and the fact, so pleaded, is regarded as fully established.

There is no factual dispute and the sole issue in the case being one of law is fairly presented by defendant's motion for summary judgment.

Section 5 of Title VI of the District of Columbia Revenue Act of 1937, 50 Stat. 688, c. 690, approved August 17, 1937, D. C. Code Supp. V, T. 20, § 970d provides that for the privilege of engaging in business in the District of Columbia each person so engaged shall pay to the Collector of Taxes of the District of Columbia for the fiscal year 1937-1938 a tax equal to two-fifths of one per centum of the gross receipts in excess of $2,000 derived from such business for the calendar year 1936. Section 1(a) of Title VI provides that the term "person" includes any individual, firm, copartnership, joint adventure, association, corporation (domestic or foreign), trust, estate, receiver, or any other group or combination acting as a unit, and Sec-

tion 1(d) provides that the term "business" shall include the carrying on or exercising for gain or economic benefit, either direct or indirect, any trade, business, profession, vocation or commercial activity in or on privately owned property and in or on property owned by the United States Government in the District of Columbia. Section 4 requires that every person subject to the tax shall, within 30 days after the approval of the Act, furnish to the assessor, D. C., a return showing the gross receipts of such person during the preceding calendar year and Section 9 provides that any person failing to file a return within the time required shall be subject to a penalty of 10 per centum of the tax due plus 5 per centum of such tax for each month of delay or fraction thereof.

Title VI of the District of Columbia Revenue Act of 1937, as amended by the Act approved May 16, 1938 (52 Stat. 363, c. 223, D.C.Code Supp. V, T. 20, § 970 et seq.), imposed a tax for the privilege of engaging in business in the District of Columbia for the fiscal year ending June 30, 1939 (measured upon the gross receipts derived from such business during the calendar year 1937). The material provisions of the amended title are substantially the same as those of the original title, except that the definition of "business" was extended to include all rental of real estate and real and personal property regardless of whether such rentals were derived from the operation of a business. Returns under the amended title were required to be filed during the month of July, 1938, and penalties were imposed for late filing at the rate of 10 per centum of the tax due for the first month of delay plus 5 per centum of such tax for each additional month of delay or fraction thereof.

In support of his motion for summary judgment the defendant contends that in liquidating an insolvent national banking association under the direction of the Comptroller of the Currency he is not a "person" and is not "engaged in business" within the meaning of the taxing act; he denies that the statute imposing the business privilege tax applies to a receiver of an insolvent national banking association located in the District of Columbia and contends that the receipts obtained by him as such receiver in the course of liquidation are exempt from the tax; he claims

that under the Revenue Act of 1937 national banks are exempt from the provisions of the taxing act, and hence the receiver of an insolvent national banking association is so exempted. It is further urged by the defendant that Section 570, Title 12, U.S.C., 12 U.S.C.A. § 570, makes the taxing act inapplicable to a receiver of an insolvent national banking association by reason of the provisions therein that where a bank has ceased to do business by reason of insolvency no tax shall be assessed or collected which diminishes the assets necessary for full payment of the depositors of the insolvent bank.

■■■ The authorities are uniform in holding that the receiver of an insolvent national bank, appointed by the Comptroller of the Currency, is an officer of the United States, and is the agent of the Comptroller of the Currency charged with carrying out the statutory duties relating to the administration and liquidation of the insolvent association. Auten v. United States Nat. Bank, 174 U.S. 125, 19 S. Ct. 628, 43 L.Ed. 920; Hulse v. Argetsinger, D.C., 12 F.2d 933; Leonard v. Gage, 4 Cir., 94 F.2d 19. Such receiver stands in the place of the bank and he represents the bank, the creditors and the stockholders. Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146; Id., 296 U.S. 568, 56 S.Ct. 249, 80 L.Ed. 401. The possession of the assets of the bank under the direction of the Comptroller of the Currency is the possession of the United States. Port Newark Nat. Bank v. Waldron, 3 Cir., 46 F.2d 296; Liberty Nat. Bank v. McIntosh, 4 Cir., 16 F.2d 906. The National Banking Act contemplates a complete system for the administration and liquidation of the insolvent association for the benefit of its creditors, with the receiver acting as the administrative agent for that purpose, such receiver acting under the direction of the Comptroller of the Currency. Whelan v. Blankenbeckler, 5 Cir., 87 F.2d 81; United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872. Having in mind the official status of the receiver as outlined by the authorities, it is at once apparent that his sole duty, as the description of his office clearly indicates, is to liquidate a corporate structure that has already ceased to conduct a business. The property of an insolvent bank cannot be distributed in kind. It

must be reduced to cash before pro rated dividends can be made. The common duties of a receiver are to collect the assets, to sell on the market, to sue on claims, to collect outstanding notes. He may be required to handle or sell real estate. If the market is bad it may be necessary for him to rent the real estate and receive the rents and profits arising therefrom. If property is productive of income, it is the duty of the receiver to make collection thereof for the benefit of creditors. A receiver is not only obliged to preserve the assets which come into his hands but he is charged with the duty of making reasonable and appropriate use thereof in the interest of creditors. Here the receiver took over certain real estate consisting of an office building and certain apartment houses which are productive of rents. His duty in relation thereto is clear.

■■■ Section 6, title 6, of the Business Privilege Tax Acts, D.C.Code Supp. V, T. 20, § 970e, exempts national banks from the tax. It is a well established rule that insolvency and appointment of a receiver of a national bank by the Comptroller does not dissolve the corporation and the assets remain its property. Wittnebel v. Loughman, 2 Cir., 80 F.2d 222; Wilson v. Awalt, D.C., 2 F.Supp. 465. Thus, the District National Bank is still in existence and the tax sought to be collected is upon its assets, and this the above section prohibits. The assets of the insolvent national bank in the hands of the receiver are likewise exempt from the tax. Rosenblatt v. Johnston, 104 U.S. 462, 26 L.Ed. 832. The property held by the receiver is exempt to the same extent as it was before his appointment. Gully v. First National Bank of Meridian, 5 Cir., 81 F.2d 502.

■■■ From a reading of the statute, Title 12, U.S.C.A. Sections 192 and 194, it becomes clear that Congress intended to place exclusive control of an insolvent bank in the hands of the Comptroller of the Currency for the liquidation of its assets through a receiver who acts under his direction. All money coming into the hands of the receiver shall be paid to the Treasurer of the United States subject to the order of the Comptroller. The Comptroller is required to make ratable dividends of the money paid over by the receiver upon proved claims. Complete provision is made for the distribution of all funds derived from the liquidation of

the assets of the insolvent national banking association. It was intended to throw the entire control of insolvent banks into the hands of the Comptroller of the Currency, to centralize power and responsibility for the purpose of winding up the affairs of the association and the payment of its obligations. Cook County National Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537. It has long been settled that the national bank laws govern the distribution of the assets of an insolvent national bank, and that their provisions are not to be departed from. Gamble v. Wimberly, 4 Cir., 44 F.2d 329.

By Section 570, Title 12, U.S.C., 12 U.S.C.A. § 570, it is provided as follows: "Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks and trust companies organized under State law as shall be found to affect the claims of their depositors."

 The quoted section operated to abate the tax here sought to be collected, since it appears that assets of the District National Bank are not sufficient to pay depositors in full. An examination of the legislative history indicates the congressional intention to protect depositors. It was believed that depositors should not be obliged to pay taxes out of funds insufficient to reimburse them for the deposits they had made. It was believed that whenever conflict arises between a claim for taxes and the claim of a depositor in an insolvent bank the claim for taxes should give way. It was thought unjust that in winding up the affairs of an insolvent bank the taxing authority could be permitted to tax the remaining deposits at the cost of the depositors. It was intended that the depositors of insolvent banks should receive as large a share of the assets as possible. To afford the relief to which the depositors of this insolvent bank are entitled it seems necessary to hold that the funds are not subject to the taxes which have been imposed. There are no funds from which the receiver may pay such taxes except the money of the depositors. The section under consideration is applicable to the District of Columbia. Hazen v. Hardee, 64 App.D.C. 346, 78 F.2d 230, 232. In that case the Court of Appeals for the District of Columbia held that the receiver was required to file the return but was of the opinion no tax could be collected until after the depositors were paid in full. In that case the court said, "If, in this case, there are not sufficient assets in the final liquidation of the bank to pay all depositors in full, no tax can be collected, and the filing of the return will have been wholly bootless; * * *." It is believed that section 570 of Title 12, U.S.C., 12 U.S.C.A. § 570, as applied to the agreed facts of this case exempt the defendant, receiver of a national banking association, from the payment of the tax sought to be collected. The National Banking Act is to be given a liberal construction so as to protect the depositors. Grindley v. First National Bank-Detroit, 6 Cir., 87 F.2d 110; Lawrence National Bank v. Rice, 10 Cir., 83 F.2d 642; Korbly v. Springfield Institute for Savings, 245 U.S. 330, 38 S.Ct. 88, 62 L.Ed. 326. The motion is sustained.