## SUBURBAN TITLE & INVESTMENT CORPORATION v. DISTRICT OF COLUMBIA.

### No. 9995.

United States Court of Appeals
District of Columbia Circuit

Argued Oct. 31, 1949.

Decided Jan. 23, 1950.

———◆———

Mr. Louis M. Denit, Washington, D. C. with whom Messrs. Thomas S. Jackson and A. Leckie Cox, Washington, D. C. were on the brief, for petitioner.

Mr. Harry L. Walker, Assistant Corporation Counsel, Washington, D. C. with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C. were on the brief, for respondent.

Before EDGERTON, WILBUR K. MILLER, and PROCTOR, Circuit Judges.

PER CURIAM.

During the tax year 1948 petitioner, a Delaware corporation doing a title insurance business, had its statutory office in Delaware and its principal office in the District of Columbia. It had no other offices. The Board of Tax Appeals found without dispute that petitioner did nothing outside the District "with the exception of the work of searching titles, which was conducted in the court houses at the county seats of the counties in which the land involved was situated. Its title records, except those currently in use in the county seats, were kept in Washington, as were also its books of accounts and corporate records. Its directors had their meetings in the District; the title opinions were written, and titles were issued in the District. It had nine or ten employees in Maryland and sixteen employees in the District. Petitioner insured titles at the request of lending institutions, most of which were located in the District, and for other persons, some of whom resided in the District and others of whom did not. * * * Payments were made to petitioner at its Washington office. All of its bank accounts were with banks in the District." Petitioner concedes it "transacts all of its business in the District of Columbia. It prepares all title certificates, and conducts here all operations and transactions which are incidental to its business of issuing title insurance, such as settlements of real estate transactions, preparing conveyances, comparing papers and documents, noting the same, etc."

The Board of Tax Appeals held, rightly we think, that petitioner was taxable for the tax year 1948 under D.C.Code (1940) § 47—1702, which imposes on title insurance companies and certain others a tax of "one and one-half per centum of their gross receipts in the District of Columbia." We think it immaterial that petitioner's business related entirely to Maryland land. A section of the Code not now in issue, § 47—1806, imposes on insurance companies a tax of two per cent of the "consideration received on all insurance and annuity contracts on risks in the District of Columbia." We think the words we are

construing, "gross receipts in the District of Columbia," are not equivalent to "consideration received * * * on risks in the District of Columbia." In our opinion the Pickford case (District of Columbia v. Pickford), 86 U.S.App.D.C. —, 179 F. 2d 271, which we decided December 12, 1949, is not in point.

Affirmed.

WILBUR K. MILLER, Circuit Judge, dissenting.

I think my brethren have decided this case incorrectly. In construing the Code section involved, it seems to me they have failed to consider its history, and the light which is thrown upon it by Supreme Court decisions and by an opinion of this court interpreting a companion statute. Moreover, they cite no authority in support of their conclusion.

The majority say they "think it immaterial that petitioner's business related entirely to Maryland land." Instead of being immaterial that fact is, in my judgment, determinative of the question presented by this appeal. This is readily apparent when the case is fully stated, when the statute is carefully studied, and when applicable decisions are considered.

The Board of Tax Appeals for the District of Columbia held the petitioner, Suburban Title and Investment Corporation, subject to taxation for the fiscal year ended in 1948 under Title 47, § 1702, of the District of Columbia Code (1940), which reads as follows: "All companies, incorporated or otherwise, who guarantee the fidelity of any individual or individuals, such as bonding companies, and all companies who furnish abstracts of titles to real property, or who insure real estate titles, shall pay to the collector of taxes of the District of Columbia one and one-half per centum of their gross receipts in the District of Columbia. (July 1, 1902, 32 Stat. 619, ch. 1352, § 6, par. 6; Apr. 28, 1904, 33 Stat. 564, ch. 1815.)"

The Suburban Title and Investment Corporation was organized in 1921 under the laws of Delaware and has since been engaged in the title insurance business.

While it maintains a statutory office in Delaware, its principal office is in the District of Columbia. It has always confined its activity to the insurance of titles to real estate in Montgomery and Prince Georges Counties, Maryland, both of which adjoin the District. Except for one instance properly treated by the parties and by the Board as negligible, it has never issued a certificate with respect to the title of real estate in the District of Columbia. For the years 1946 and 1947 the petitioner filed District of Columbia income tax returns and paid the taxes disclosed thereby. In 1948, pursuant to official demand but under protest, it paid a tax on its gross receipts under the provisions of § 1702. Whether this tax was validly imposed by the District of Columbia is the question before us.

The petitioner relied for reversal upon the contention that it is subject to the tax imposed by § 1806 of the Code; that it is not taxable under § 1702 because, by the terms of § 1806, title insurance companies which are within its purview are exempt from all other taxes except real estate levies and the fees and charges required by the insurance laws. Section 1806 is, in pertinent part, as follows: "All such companies, including companies which issue annuity contracts, shall also pay to the collector of taxes of the District of Columbia a sum of money as taxes equal to 2 per centum of their policy and membership fees and net premium receipts or consideration received on all insurance and annuity contracts on risks in the District of Columbia, said taxes to be paid before the 1st day of March of each year on the amount of such income for the year ending December 31, next preceding. Such tax shall be in lieu of all other taxes except (1) taxes upon real estate and (2) fees and charges provided for by the insurance laws of the District including amendments made to such laws by this title."

The petitioner has not actually paid taxes under § 1806 because it has had no fees or receipts from insurance contracts on "risks in the District of Columbia," but, nevertheless, it claims the exemption

from other taxes given by that section, contending that § 1806 applies to it even though it has no tax to pay thereunder. I shall first consider that contention, for, if it be sound, the petitioner's claim to exemption from taxation under § 1702 should have been sustained.

Section 1806 of the Code is a part of an act of Congress known as the District of Columbia Revenue Act of 1937 and is § 6 of Title II thereof, headed "Taxes on Insurance Companies." While Title II has to do with taxes and appears in the Code under Title 47, which is denominated "Taxation and Fiscal Affairs", it could be accurately described as an addition to the comprehensive plan for the regulation of the business of insurance which was adopted by the Congress many years ago and which appears as Title 35 of the Code. Certainly the first five sections of Title II of the Revenue Act of 1937, which appear as §§ 1801–1805 of the Code, may be said to belong more properly under Title 35 than under Title 47.

Those five sections provide that no company may issue contracts of insurance without first obtaining from the superintendent of insurance of the District of Columbia an annual license or certificate of authority upon payment of a nominal fee; that a company which issues contracts of insurance in the District of Columbia without first having obtained a license or certificate of authority is subject to a fine of $100 for each day it so offends; that each insurance company shall file an annual statement of its operations and pay a small fee therefor and that its license or certificate of authority may be revoked if it fails to file such annual statement. These provisions of Title II of the Revenue Act of 1937 obviously are for the protection of the public in the District of Columbia. The dominant purpose of Congress in providing for the careful regulation of the insurance business was to protect the inhabitants of the District of Columbia by assuring the con-

tinuing solvency of insurers and the fairness of their rates and practices.[1]

Following the first five sections of Title II of the Revenue Act of 1937 (§§ 1801–1805 of the Code), which I have summarized above is § 6 (§ 1806 of the Code) beginning thus: "All such companies * * * shall also pay * * * a sum of money as taxes equal to 2 per centum of their policy and membership fees and net premium receipts or consideration received on all insurance and annuity contracts on risks in the District of Columbia * * *"

The expression "All such companies" obviously refers only to those insurance companies which are required to obtain an annual license or certificate of authority from the superintendent of insurance of the District of Columbia and which would be subject to a heavy fine for issuing contracts of insurance "in the District of Columbia" without such license or certificate, and which are required to file annually statements of operations, failing which their license may be revoked.

Moreover, the use of the word "also" in the provision of § 6 which requires that all such companies "shall also pay" a tax equal to two per cent of gross receipts on insurance contracts on risks in the District of Columbia further shows that "All such companies" are those, and only those, which must and do observe the requirements of the first five sections of Title II, and which pay the fees therein required.

Since Suburban Title does not insure titles to District of Columbia real estate, the District authorities have never demanded that it comply with those sections, and the petitioner has never done so. Plainly then, Suburban is not one of "such companies" which must pay the tax prescribed by § 1806. Consequently, that Code provision, being wholly inapplicable to Suburban Title, does not exempt it from taxation under § 1702. Although the majority opinion inaccurately refers to § 1806 as "A section of the Code not now in

---

**1.** In United States ex rel. Kreh v. Ingham, 1912, 38 App.D.C. 379, we said in effect that the object of insurance laws providing for licensing agents, brokers and solicitors, is more for the protection of the public than to provide revenue.

issue * * *", I think my brethren were correct in tacitly rejecting Suburban's vigorous assertion that § 1806 was applicable to it.

It does not necessarily follow, however, that the petitioner was subject to § 1702 and that it was lawfully taxed thereunder. Whether so or not is a problem to which I now turn.

Sections 1701 and 1702, as originally worded, were parts of an act of July 1, 1902, 32 Stat. 619, ch. 1352, § 6, pars. 5 and 6. Both were amended by an act of April 28, 1904, 33 Stat. 564, ch. 1815, § 2. Section 1701 as so amended was considered by this court in Potomac Electric Power Company v. Hazen et al., Commissioners of the District of Columbia, 1937, 67 App. D.C. 161, 90 F.2d 406, an opinion which is enlightening and helpful in the consideration of § 1702.

In that case the Power Company filed a bill to set aside and declare null and void an assessment and taxes levied, purportedly under the authority of § 1701 (as amended in 1904) on its gross earnings from the sale of electricity in the State of Maryland. The trial court denied relief. The opinion affirming the judgment summarized the original § 1701 and the 1904 amendment thereto as follows, 67 App.D.C. at page 162, 90 F.2d at page 407:

"Paragraph 5 of section 6 of the Act of July 1, 1902 (chapter 1352, 32 Stat. 590, 617, 619), required 'all gas, electric lighting, and telephone companies, through their proper officers,' to make affidavit to the Board of Personal Tax Appraisers of the District of 'the amount of its or their gross earnings for the preceding year,' and to pay to the collector of taxes of the District 'per annum on such gross earnings as follows: * * * each gas company, five per centum; each electric lighting, and telephone company, four per centum. And in addition thereto the real estate owned by each * * * gas, electric lighting and telephone company in the District' to be taxed as other real estate

in the District; 'Provided, That street railroad companies shall continue to pay the four per centum per annum on their gross receipts and other taxes as provided by existing law.'

"Paragraph 5 has remained unchanged, except as amended by the Act of April 28, 1904 (chapter 1815, 33 Stat. 563, 564), providing 'that that part of the proviso in paragraph five, section six, relating to street railroads "shall be construed to mean that all street railroad companies shall pay four per centum per annum on their gross receipts within the District of Columbia and other taxes as provided by existing law."' "

The position of the Power Company was that its gross earnings from operations outside the District of Columbia were not properly taxable under § 1701. This court pointed out that the tax imposed by that section is a franchise tax measured by gross earnings;[2] that the statute is all inclusive—covering gross earning from whatever source. We added, 67 App.D.C. at page 163, 90 F.2d at page 408: " * * * Under the act of 1902 street railroad companies were required to pay tax on their gross receipts generally and without restriction. But by the amendment of 1904 Congress narrowed the scope of the railroad tax to gross receipts *within* the District, thereby plainly evincing an intent to maintain or continue in force the broad scope of the tax imposed on the other utilities covered by the act. There being no violation of the Constitution, Congress of course may select the subjects of taxation and tax them differently as it sees fit."

Because of this decision, and in order to give uniform treatment to all four forms of utilities as far as the source of their taxable gross receipts was concerned, Congress in 1939 (53 Stat. 1107, ch. 367, Title IV, § 2) further amended paragraph 5 of § 6 of the act of 1902 by causing it to read as it now appears in the Code as § 1701. It will be observed that this amendment narrowed the scope of the tax,

2. Security Savings & Commercial Bank v. District of Columbia, 1922, 51 App.D.C. 316, 279 F. 185; Potomac Electric Power Co. v. Rudolph, 1928, 58 App.D.C. 261, 29 F.2d 634, certiorari denied 278 U.S. 656, 49 S.Ct. 185, 73 L.Ed. 565.

as to gas companies, electric lighting companies and telephone companies, to gross receipts "from the sale of public utility commodities and services within the District of Columbia", thus placing those utilities in the favorable position theretofore occupied only by street railroad companies. The amendment left in effect as to banks and trust companies the requirement that the tax be measured by gross earnings without limitation as to their geographical source.

The Hazen opinion is helpful in the consideration of the case in hand because it shows that the words "gross receipts" in these tax statutes include receipts from sources both within and without the District, unless Congress adds qaulifying language which shows an intention to restrict the meaning of the term "gross receipts" to receipts from sources within the District of Columbia. That being so, it is noteworthy and significant that § 1702 does not simply say surety companies and title insurance companies shall pay taxes on their "gross receipts", without restriction as to the source of those receipts. To the contrary, a restriction as to the geographical source of taxable gross receipts is emphasized: the tax is laid on "their gross receipts *in the District of Columbia.*" (Emphasis supplied.)

I see no difference between the words "in" and "within" in this connotation; and therefore I think the words "in the District of Columbia" at the end of § 1702 restrict the application of the tax to insurance companies which derive income from insurance written on risks in the District of Columbia; but that the tax is measured by that income plus any other receipts arising from District sources. Consequently, I have no doubt that the expression "gross receipts in the District of Columbia" in § 1702 means gross receipts from insurance written on risks in the District of Columbia, plus gross receipts, if any, from other sources within the District.

It should be carefully noted, however, that, before the tax imposed by § 1702 can attach, there must be gross receipts from insurance written on District of Colum-

bia risks. This is so because the tax is laid upon the privilege of insuring risks in the District. If that activity is not engaged in, there is no tax under § 1702. In this case the petitioner is not a corporate creature of the District of Columbia. It accomplishes no corporate purpose, exercises no franchise, and insures no risks, in the District. The mere physical receipt in this jurisdiction by the petitioner of moneys arising from insuring risks in Maryland only, does not stamp those funds as "gross receipts in the District of Columbia" in the meaning of the statute.

I am supported in this view by several decisions of the Supreme Court of the United States construing a privilege tax almost identical with the franchise taxes provided for in §§ 1701 and 1702. Section 38 of an act of Congress, approved August 5, 1909, known as the Corporation Tax Law (36 Stat. 11, 112–117, ch. 6), provided: " * * * That every corporation * * * organized for profit and having a capital stock represented by shares * * * and engaged in business in any State * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year * * *"

With respect to this statute the Supreme Court said in Flint v. Stone Tracy Company, 1911, 220 U.S. 107, 145, 31 S.Ct. 342, 347, 55 L.Ed. 389, Ann.Cas.1912B, 1312, " * * * the tax is imposed not upon the franchises of the corporation, irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof * * *"

Again the Court said in the Flint case, 220 U.S. at page 146, 31 S.Ct. at page 347: " * * * In other words, the tax is imposed upon the doing of business of the character described * * *"

While the Court sustained the use of income from all sources as the measure of the

tax, it said, 220 U.S. at pages 151-152, 31 S.Ct. at page 349: "The tax under consideration, as we have construed the statute, must be described as an excise upon the particular privilege of doing business in a corporate capacity, *i. e.,* with the advantages which arise from corporate or quasi-corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the *Thomas Case,* [Thomas v. U. S.], 192 U.S. 363, [24 S.Ct. 305, 48 L.Ed. 481], *supra,* the requirement to pay such taxes involves the exercise of privileges, and the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable."

The Corporation Tax Law of 1909 was again before the Supreme Court in McCoach v. Minehill & Schuylkill Haven Railroad Company, 1913, 228 U.S. 295, 33 S. Ct. 419, 57 L.Ed. 842. The Minehill & Schuylkill Haven Railroad Company had leased its entire railroad and all property connected therewith prior to the enactment of the statute. After that it carried on no business in connection with the operation of the railroad. It did, to be sure, maintain its corporate existence and organization; and it received annually from the lessee the fixed rental stipulated by the lease and also received annually sums of money as interest on its bank deposits. It paid the expense of maintaining its office and keeping up its corporate existence.

After holding the case was governed by what was said in Flint v. Stone Tracy Company, 220 U.S. at page 145, 31 S.Ct. at page 346, the Supreme Court said, 228 U. S. at page 306, 33 S.Ct. at page 424: "In our opinion the mere receipt of income from the property leased (the property being used in business by the lessee, and not by the lessor) and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the Minehill Company, amount to no more than re-ceiving the ordinary fruits that arise from the ownership of property."

The McCoach opinion then quoted from the Flint case to show that the measure of a privilege tax may be the income from all sources, both franchise and non-franchise activities, and continued thus, 228 U.S. at pages 307-308, 33 S.Ct. at page 424: " * * * But that reasoning furnishes no support for the contention that the mere receipt of income from property, and the payment of organization and administration expenses incidental to the receipt and distribution thereof, constitute such a business as is taxable within the meaning of the act of 1909. The distinction is between (a) the receipt of income from outside property or investments by a company that is otherwise engaged in business; in which event the investment-income may be added to the business-income in order to arrive at the measure of the tax, and (b) the receipt of income from property or investments by a company that is not engaged in business except the business of owning the property, maintaining the investments, collecting the income and dividing it among its stockholders. In the former case the tax is payable; in the latter not."

The case of District of Columbia v. Pickford, 1949, 86 U.S.App.D.C. ——, 179 F.2d 271, had to do with a tax similar to that involved here. Reference is made to that opinion which contains a comprehensive discussion of the subject and in which the conclusion reached is identical with that which I have expressed herein.

In my view, the petitioner was not subject to the tax of § 1806 because it derived no income from insuring titles to real estate located in the District of Columbia, and it was not subject to the tax of § 1702 for the same reason. Since I conclude that neither section is applicable here, I am not concerned with the question whether the later § 1806 impliedly repealed the earlier § 1702 (a question ignored by the majority opinion), nor with the question whether Congress intended to, or could, tax under both sections title companies insuring District titles.