**COLUMBIA NATIONAL BANK OF WASH-
INGTON v. DISTRICT OF
COLUMBIA.**

**Nos. 10844 and 10854.**

United States Court of Appeals
District of Columbia Circuit.

Argued Before Court of Three Judges
April 25, 1951.

Decided by Court of Three Judges
June 28, 1951.

Argued on Rehearing in Banc in No. 10854
Jan. 7, 1952.

Decided on Rehearing in Banc in No. 10854
March 28, 1952.

Mr. Louis H. Mann, Washington, D. C.
with whom Mr. Walter B. Guy, Washing-
ton, D. C. was on the brief, for petitioner.

Mr. Harry L. Walker, Asst. Corporation
Counsel for the District of Columbia, with
whom Messrs. Vernon E. West, Corpora-
tion Counsel, Chester H. Gray, Principal
Asst. Corporation Counsel, and George C.
Updegraff, Asst. Corporation Counsel, were
on the brief, for respondent.

Before EDGERTON, PRETTYMAN,
and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

On November 30, 1946 petitioner sold its
assets, ceased business, and went into vol-
untary liquidation. It afterwards paid,
under protest, taxes measured by its gross
earnings for years ending June 30, 1946
and June 30, 1947. It contends it is tax-
able on only 5/12 of its earnings for the
first of those years and not taxable at all
on its earnings for the second. But the
statute provides without qualification: "In-
corporated savings banks paying interest
to their depositors shall, through their pres-
ident or cashier, make *report* under oath to
the board of personal-tax appraisers on or
before the 1st day of August in each year
as to *the amount of their gross earnings,*
less the amount paid as interest to their
depositors *for the preceding year* ending
June 30th, *and shall pay thereon* to the
collector of taxes of the District of Colum-
bia *four per centum* per annum." 32 Stat.
619, as amended, 33 Stat. 564, D.C.Code
(1940) § 47–1703. (Emphasis supplied.)
It is undisputed that petitioner was an "in-
corporated savings bank" paying interest to
its depositors. Hamilton National Bank of
Washington v. District of Columbia, 85 U.
S.App.D.C. 109, 176 F.2d 624.

Petitioner contends in effect that we
should read into the statute, at the end of
the sentence we have quoted, the following
proviso: "Provided, however, that if a
bank is in business during only part of a
year it shall pay a tax on only a correspond-
ing part of its gross earnings for the pre-
ceding year, and if it is not in business at
all during a year it shall pay no tax on its
earnings for the preceding year." We

agree with the Board of Tax Appeals that the statute must be enforced as it is written. The point was involved though not discussed in Hazen v. Hardee, 64 App.D.C. 346, 78 F.2d 230.

We find no decision to the contrary. American Security & Trust Co. v. District of Columbia, 29 App.D.C. 265, on which petitioner relies, did not involve the point. That case dealt with a going concern and enforced the statute according to its terms by requiring payment at an increased rate which the statute established. The case followed District of Columbia v. Glass, 27 App.D.C. 576, which gave the taxpayer the benefit of a decreased rate established by a similar statute. In each case the court gave effect to the literal terms of the statute. In the American Security case the court expressly rejected a construction that would have led to a tax-free period. 29 App.D.C. at 268–269.

The gross-earnings tax has been declared to be a franchise tax on the privilege of doing business. We think this immaterial here, for petitioner was exercising that privilege when the taxed earnings were realized. It is urged that tax officials and judges have referred to the tax as "for" the years in which it is assessed and collected; that the words "franchise tax" and "for" have technical connotations in tax law; and that according to these connotations, the tax is to be paid only if business is done in the year in which it is to be assessed and collected. A sufficient answer to this argument is that Congress did not use the words on which petitioner relies.[1] If Congress had used them the question would arise whether Congress intended them to cut down the meaning of the words "shall * * * report * * * the amount of their gross earnings * * * for the preceding year * * * and shall pay thereon * * * four per centum * * *". Since Congress did not use them we see no problem.

Affirmed.

PRETTYMAN, Circuit Judge (concurring in the result in part and dissenting in part).

I think my brethren are in error in these cases and in their companion case, No. 10846, Citizens Bank of Washington v. District of Columbia, 89 U.S.App.D.C. —, 195 F.2d 946. This tax is a franchise tax upon the privilege of doing business[1] and is for a fiscal year beginning July 1st and ending June 30th. It is payable on or before August 1st. The question is: Is the tax, returnable August 1st, a tax for the then-current year or is it a tax for the prior year?

This is a very old statute, as tax statutes go, having been enacted in 1902. Its nature has long since been established, and I think we ought not to upset the whole concept at this late date.

The pertinent considerations begin in 1890. In that year Congress enacted a statute governing the organization and operation of loan and trust companies in the District of Columbia. That statute provided that each such company should "pay to the District of Columbia, in lieu of personal taxes for each next ensuing year, one and a half per centum of its gross earnings for the preceding year * * *."[2] That statute was certainly clear enough. The tax was for the ensuing year, and the earnings by which it was determined were

---

1. Neild v. District of Columbia, 71 App. D.C. 306, 110 F.2d 246, is irrelevant because in the statute there involved Congress said the tax was "for" a specified year: "For the privilege of engaging in business in the District of Columbia, each person so engaged shall pay to the collector of taxes of the District of Columbia for the fiscal year 1937–1938 a tax equal to two-fifths of 1 per centum of the gross receipts in excess of $2,000 derived from such business for the calendar year 1936 * * *." 50 Stat. 690, § 5.

1. Security Savings & Com. Bank v. District of Columbia, 1922, 51 App.D.C. 316, 279 F. 185; Potomac Electric Power Co. v. Rudolph, 1928, 58 App.D.C. 261, 29 F.2d 634, certiorari denied, 1929, 278 U.S. 656, 49 S.Ct. 185, 73 L.Ed. 565; Potomac Electric Power Co. v. Hazen, 1937, 67 App.D.C. 161, 90 F.2d 406, certiorari denied, 1937, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535.

2. 26 Stat. 629.

the earnings of the preceding year. That tax and those earnings were on a calendar year basis.

In 1902 Congress enacted the statute which is basically the one with which we are here concerned. As part of the appropriations act that year Congress included a section entitled "Taxation of Personal Property", which amended existing statutes on that subject and added new provisions. Among other things, that act provided that national banks, other incorporated banks, and trust companies, and gas, electric lighting, and telephone companies should file affidavits "on or before the first day of August each year as to the amount of its or their gross earnings for the preceding year ending the thirtieth day of June, and shall pay to the collector of taxes of the District of Columbia per annum on such gross earnings as follows: Each national bank, and all other incorporated banks, and trust companies, respectively, six per centum; * * *. That so much of the Act approved October first, eighteen hundred and ninety, entitled 'An Act to provide for the incorporation of trust, loan, mortgage, and certain other corporations within the District of Columbia' as is inconsistent with the provisions of this section is hereby repealed." [3]

The new act was effective July 1, 1902. Since the trust companies had already paid, or were about to pay, under the old act taxes for the full calendar year 1902, the question at once arose as to the meaning of the new statute. The question came to this court and was decided in American Security & T. Co. v. District of Columbia.[4] The court made it perfectly clear in its statement of the case[5] that the tax computed upon the gross earnings for the fiscal year ended June 30, 1902, was for the year beginning July 1, 1902. In its opinion the court made equally clear that the new statute fitted into the pattern of the old. The new amended the old, the court held, in

two respects, (1) the rate and (2) fiscal instead of calendar year. Thus it seems clear to me that the 1902 statute, like the 1890 statute, imposed a tax for each ensuing year computed upon the earnings for the preceding year. I see no escape from that conclusion. In all this time, no different conclusion has ever, up to now, been stated.

In 1904 Congress amended the 1902 statute by adding a short new paragraph, reading as follows: "That hereafter, beginning with the fiscal year commencing July first, nineteen hundred and four, incorporated savings banks paying interest to their depositors shall, through their president or cashier, make report under oath to the board of personal tax appraisers on or before the first day of August in each year as to the amount of their gross earnings, less the amount paid as interest to their depositors for the preceding year ending June thirtieth, and shall pay thereon to the collector of taxes of the District of Columbia four per centum per annum." [6]

The effect of this additional paragraph was to take incorporated savings banks out of the class of "other incorporated banks", where they were under the 1902 Act, and put them in a separate class, taxable at four per cent instead of six per cent. The amendment in no way changed the nature or pattern of the basic 1902 Act. In the present case our direct concern is with the paragraph added in 1904.

The court refers to this tax as being "on its [the Bank's] gross earnings" and says that the statute must be enforced "as it is written."

The fact is that the tax was long ago held by this court to be a franchise tax upon the doing of business in one year, measured by the amount of the gross earnings of the prior year, and its validity was upheld upon that basis.[7] It was not a mere matter of label but was a matter of essential nature. If the tax is "on" gross earnings it is a property tax.[8]

---

3. 32 Stat. 619.

4. 1907, 29 App.D.C. 265.

5. Id., 29 App.D.C. at page 267.

6. 33 Stat. 564.

7. Security Savings & Com. Bank v. District of Columbia, 1922, 51 App.D.C. 316, 279 F. 185.

8. See also Potomac Electric Power Co. v. Hazen, 1937, 67 App.D.C. 161, 90

I realize that much has been written and held in late years concerning the impact of gross receipts taxes upon interstate commerce, and in that shifting trend of decision the differences between franchise taxes and property taxes have upon occasion been minimized. However, in its more recent cases the Supreme Court has recognized such differences and has indeed made them critical. This is not an occasion for venture into the complications of that subject. The cases up to 1947 are collected and discussed in "More Ado About Gross Receipts Taxes" by Thomas Reed Powell.[9] After that article was published, Norton Co. v. Dept. of Revenue,[10] Canton R. Co. v. Rogan[11] and Western Maryland R. Co. v. Rogan[12] were decided, and the intervening cases are there noted. The discussions in those last opinions are pertinent to the point I make, that the distinctive features of these taxes and their incidence should be observed to the maximum extent possible lest the whole matter fall into hopeless confusion. For example, Mr. Justice Douglas, in the Canton Railroad case, distinguishing a franchise tax measured by gross receipts from many other taxes, observed: "The difference is that in the present case the tax is not on the *goods* but on the *handling* of them at the port." (Emphasis in the original.) So it seems to me to be a great mistake in the present case to wipe out the difference between a tax on gross receipts as such and a franchise tax on the privilege of doing business.

The tax before us is not a new tax; its character and meaning have been established with complete clarity for almost fifty years. I think those established rules ought not now to be discarded. It seems to me that many unanticipated undesirable results, tax-wise to the District government, will ensue from this decision.

The court says that if this is a franchise tax it is a franchise for the year preceding its payment, not the year in which it is paid. Precisely the opposite of that was held by this court as to this same tax in the American Security & Trust Company case, supra.

The administrative practice has been that the tax being paid is for the then-current year. The notices of assessment which the Assessor sent this taxpayer in the record now before us, so read. The assessment computed upon earnings in the year ended June 30, 1946, read "For Fiscal Year 1947", and the assessment computed upon earnings in the fiscal year 1947 read "For Fiscal Year 1948". So far as the record shows (and we can safely assume that if there had been a radical change in this respect it would have been indicated), this has been the consistent administrative practice since 1902. I do not see how the District can be allowed to send a taxpayer a notice of assessment "for the fiscal year 1948", in a consistent pattern with such notices sent for many, many years, and then when the tax is protested be heard to say, "That notice was wrong. That tax was for 1947. And the assessment we sent you for 1947 was for 1946. And the one we sent you for 1946 was for 1945. And so on back to 1902. And the American Security & Trust Company decision was wrong."

The court refers with some brevity to the word "for", in relation to a year in tax matters, as being a word used by tax officials and judges and as having technical connotations. My notion is that the taxpayer is the person who wants to know for what year he is paying the tax demanded of him. Land titles, credit ratings, penalties, and many extremely practical matters depend upon the "for" in the description of the tax. There is nothing technical about the term. It is of the essence of the description of the tax. Every tax is "for" some year, and the taxpayer has a very real and tangible interest in knowing what year every tax is "for".

F.2d 406, certiorari denied, 1937, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535; and Potomac Electric Power Co. v. Rudolph, 1928, 58 App.D.C. 261, 29 F.2d 634, certiorari denied, 1929, 278 U.S. 656, 49 S.Ct. 185, 73 L.Ed. 565.

9. 60 Harv.L.Rev. 501, 710 (1947).
10. 1951, 340 U.S. 534, 71 S.Ct. 377.
11. 1951, 340 U.S. 511, 71 S.Ct. 447, 449.
12. 1951, 340 U.S. 520, 71 S.Ct. 450.

Hazen v. Hardee[13] is not an authority upon the point. The point was not raised, was not presented to the court, was not argued, and was not mentioned by the court in that case. Of course, the decision was *res judicata* of all propositions in the case, whether mentioned or not, so far as those particular parties and that particular controversy were concerned. But a decision of a court is not an authoritative precedent upon a legal proposition which was not raised, argued or mentioned by the court.

From the foregoing I conclude that the assessments in these cases should be construed as the assessment notices were worded and as the statute had been construed since it was enacted; that the assessment in 1946 was for the fiscal year July 1, 1946, to June 30, 1947; that that in 1947 was for the year July 1, 1947, to June 30, 1948; that since the taxpayer was in existence through November, 1946, it was required to pay for its franchise for the then-current year, 1946–47, and the fact that it thereafter went out of business before the end of that year has no effect upon its liability to pay for that year's franchise; that, since it was irretrievably out of business prior to July 1, 1947, it could not be compelled to pay a franchise tax for the privilege of doing business for the year 1947–48. I therefore concur in the result in No. 10844 and dissent in No. 10854.

On Rehearing in Banc in No. 10854

Before STEPHENS, Chief Judge, and EDGERTON, WILBUR K. MILLER, PRETTYMAN, PROCTOR, BAZELON, FAHY and WASHINGTON, Circuit Judges, in Chambers.

Order

This case came on for rehearing before the Court in banc on the transcript of the record from the Board of Tax Appeals for the District of Columbia, and was argued by counsel.

Circuit Judges EDGERTON, BAZELON, FAHY and WASHINGTON being of the view that the decision of the Board of Tax Appeals of October 2, 1950, in the above-entitled case should be affirmed, and Chief Judge STEPHENS, and Circuit Judges PRETTYMAN, WILBUR K. MILLER and PROCTOR being of the view that such decision of the Board of Tax Appeals should be reversed.

Now, therefore, by reason of an equally divided court, the decision of the Board of Tax Appeals on review in the above-entitled case must be, and it is hereby, affirmed with costs.